**PEOPLES BROADCASTING CO. v.
UNITED STATES et al.**

No. 11626.

United States Court of Appeals
District of Columbia Circuit.

Argued June 16, 1953.

Decided Aug. 3, 1953.

Mr. Arthur W. Scharfeld, Washington, D. C., for petitioner.

Mr. James C. McDowell, Charleston, Mo., also entered an appearance for petitioner.

Mr. J. Roger Wollenberg, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom Mr. Benedict P. Cottone, Gen. Counsel, and Miss Mary Jane Morris, Counsel, Federal Communications Commission, Washington, D. C., were on the brief, for intervenor Federal Communications Commission.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., also entered an appearance for intervenor Federal Communications Commission.

Mr. Charles H. Weston, Chief, Appellate Section of the Antitrust Division, Dept. of Justice, Washington, D. C., Mr. Leo A. Rover, U. S. Atty., and Mr. William R. Glendon, Asst. U. S. Attorney at

the time the brief was filed, Washington, D. C., entered appearances for respondent.

Mr. Duke M. Patrick, Washington, D. C., with whom Messrs. George O. Sutton and William Thomson, Washington, D. C., were on the brief, for intervenor WGAL, Inc.

Mr. James E. Greely, Washington, D. C., for intervenor National Broadcasting Co., Inc.

Mr. Gustav B. Margraf, New York City, also entered an appearance for intervenor National Broadcasting Co., Inc.

Before PRETTYMAN, PROCTOR and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition for review of an order of the Federal Communications Commission published September 18, 1952, and an order published November 5, 1952, which dismissed a petition for reconsideration. In connection with the latter order the Commission issued a careful memorandum opinion, in which it discussed the various problems now presented to us. We agree with that opinion, and it is unnecessary for us to enter upon an extended discussion.

As the television industry began to develop, the Commission determined that the public interest required it to adopt as a part of its Rules a table of nationwide assignments of the available television channels. In 1945 it adopted such a table. As the industry continued to develop, the Commission determined that a revision of that allocation table was necessary. It gave public notice of that intention and in 1951 issued a proposed new table. Thereafter, in April, 1952, it adopted the proposed new allocations. All this was pursuant to rule-making proceedings.

Originally Channel 4 was assigned to Lancaster, Pennsylvania, and in January, 1948, WGAL, Inc., intervenor in the case at bar, was licensed to operate there on that channel as a "community station". In its reexamination of the national allocation table the Commission determined that, due to the proximity of Lancaster to New York on the one hand and Washington on the other, the same channel could not be assigned to these three points. Channel 4 was left in Washington and New York but was eliminated from Lancaster, and Channel 8 was assigned to that city. At the time the new allocations were proposed, a rule was issued upon WGAL, Inc., requiring it to show cause why its license should not be modified so as to cause it to shift from Channel 4 to Channel 8. The license of WGAL, Inc., to operate on Channel 4 became subject to renewal on July 30, 1952. It was renewed subject to the show cause order.

In the meantime Peoples Broadcasting Company had, in May, 1950, filed an application for a television station at Lancaster. It originally requested Channel 9, but after various procedural movements and counter-movements it filed an amendment specifying Channel 8. In the orders which are before us the Commission, *inter alia*, set the application of Peoples Broadcasting Company for a license and the application of WGAL, Inc., for full authorization to operate on Channel 8 for a comparative hearing and authorized WGAL, Inc., to operate temporarily with minimum power on Channel 8.

We state briefly our views upon the problems presented. (1) The Commission had authority to adopt a nation-wide television allocation plan. The purposes of the creation of the Commission, as expressed by Congress,[1] and the mandates pursuant to the purposes, enumerated at great length in the statute,[2] furnish ample support for this action. (2) The Commission has power, under Section 316(a) of the Act as amended,[3]

1. 48 Stat. 1064 (1934), as amended, 47 U. S.C.A. § 151.

2. 48 Stat. 1082 (1934), as amended, 47 U. S.C.A. § 303.

3. 66 Stat. 717 (1952), 47 U.S.C.A. § 316 (a).

to modify a license without an application for the modification having been made by the licensee. This view is apparently in conflict with Section 308(a) of the Act, which provides in pertinent part: "The Commission may grant construction permits and station licenses, or modifications or renewals thereof, only upon written application therefor received by it: * * *." But two reasons impel the result we reach. In the first place, Section 316 provides that no order of modification shall become final until the licensee shall have been notified of the proposed action and given an opportunity for hearing. If an application from the licensee were a prerequisite to an order of modification, the requirement that a licensee be notified would be totally meaningless. In the second place, if modification of licenses were entirely dependent upon the wishes of existing licensees, a large part of the regulatory power of the Commission would be nullified. The public interest and the interests of other operators must be afforded some opportunity for consideration in this field of changing circumstances.[4] We add that the legislative history of Section 316 is consistent with our view of the meaning of the section.

■ (3) The temporary authorization at minimum power granted WGAL, Inc., pending the comparative hearing, was a practical solution of a problem which involved the public interest in the continuity and quality of television service. The Commission made an express finding that the temporary grant was in the public interest. Peoples says that this grant deprived it of a portion of its right to a hearing, guaranteed it by the statute as construed by the Ashbacker decision.[5] Similar problems are inherent in every comparative hearing where the applicants are an existing licensee and a new applicant. If there had been no shift from Channel 4 to Channel 8, and Peoples had been an applicant for a license on Channel 4, the only channel allocated to Lancaster, it would have encountered the same difficulties in its comparative hearing. See Section 309(c) of the statute. In the Ashbacker case the Supreme Court noted that the Fetzer application was not conditionally granted, and thus the Court apparently recognized that a conditional grant might be made pending consideration of applications. The Commission has minimized the disadvantages to Peoples which are inherent in the situation. The grant is temporary, and it is for limited power. Moreover the Commission has expressly declared twice that it would not give any effect to the expenditure of funds by WGAL, Inc., pursuant to the temporary grant. Until and unless the contrary is shown, we must assume that the Commission will act in good faith in respect to that declaration.

It is interesting to note that, in a proceeding under Section 309(c) upon a protest to a grant of an application, the automatic stay upon the effective date of of the grant is subject to an exception, the exception being that if an existing service is involved it shall continue pending the Commission's decision after hearing. This latter provision seems to indicate a congressional intention that existing services not be suspended pending hearings upon disputes, even though the hearings are given as of right. In the case at bar WGAL's operation on Channel 4 was the only existing service in Lancaster. Peoples does not contest the deletion of that channel from Lancaster. It appears, therefore, that the Commission's temporary authorization, designed to preserve the only existing service pending the hearing, was within the scheme of the statute, even though the channel being used in that sole service was, in the general public interest, changed. Moreover Peoples urges that the modification of the WGAL license from Channel 4 to Channel 8 should have been on an application filed under Section 308; but, if it had been, the temporary

4. See, e.g., American Broadcasting Co. v. Federal Communications Comm., 1951, 89 U.S.App.D.C. 298, 191 F.2d 492.

5. Ashbacker Radio Corp. v. Federal Communications Comm., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108.

authorization would have been required by Section 309.

The orders of the Commission are valid and will be

Affirmed.