**LOGANSPORT BROADCASTING CORP.**

v.

**UNITED STATES et al.**

No. 11601.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 14, 1953.

Decided Jan. 28, 1954.

Mr. Richard A. Solomon, Acting General Counsel, Federal Communications Commission, Washington, D. C., was on the brief, for respondent and intervenor Federal Communications Commission. Mr. Charles H. Weston, Chief, Appellate Section of the Antitrust Division, Department of Justice, Washington, D. C., also entered an appearance for respondent. Miss Mary Jane Morris, Attorney, Federal Communications Commission, Washington, D. C., also entered an appearance for intervenor Federal Communications Commission. Mr. Benedict P. Cottone, General Counsel, Federal Communications Commission, Washington, D. C., at time record was filed, also entered an appearance for intervenor Federal Communications Commission.

Mr. Andrew G. Haley, Washington, D. C., with whom Messrs. Dwight D. Doty, Howard J. Schellenberg, Jr., and Mrs. Lenore G. Ehrig, Washington, D. C., were on the brief, for intervenor Wabash Valley Broadcasting Corp.

Mr. A. L. Stein, Washington, D. C., entered an appearance for intervenor Sarkes Tarzian, Inc.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Logansport Broadcasting Corporation, petitioner, complains of the action of the Federal Communications Commission in assigning VHF (very high frequency) television Channel 10 to Terre Haute, Indiana, rather than to Logansport, Indiana, and Owensboro, Kentucky. The latter cities were granted UHF (ultra high frequency) channels.[1]

Petitioner's principal attack is against the Commission's nation-wide system for allocating television frequencies, finally adopted in 1952 after elaborate and detailed hearings on the subject.[2] The Commission says that it sought to distribute

Mr. Robert M. Booth, Jr., Washington, D. C., with whom Mr. Herbert M. Bingham, Washington, D. C., was on the brief, for petitioner.

Mr. J. Roger Wollenberg, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom

1. VHF channels, which can effectively cover wider areas than UHF channels, are considered more desirable than the latter.

2. The record of the hearings consists of 39 volumes. Petitioner's participation in the proceedings came about as follows: On March 22, 1951, after hearing evidence submitted by interested parties, the Commission issued a "Third Notice of Further

the available channels so as to achieve maximum television coverage with a minimum of interference between stations, and to that end assigned a television channel or channels to each of over 1,000 cities and towns throughout the nation. Thus, frequencies were allocated among communities on the basis of one master plan—arrived at through one master hearing. This replaced the system, used in the distribution of AM radio frequencies, of making assignments only on the basis of individual applications.[3] Under the Commission's present plan the actual assignment of television channels to operators is by application, but all applications for licenses not conforming to the over-all plan are automatically dismissed. Proposals for changes in the allocation plan are considered by the Commission, but only in accordance with the usual procedure for effecting changes in Commission regulations.

Peoples Broadcasting Co. v. United States, recently decided by this court, held that the Commission had power to adopt its new plan. 1953, 93 U.S. App.D.C. ——, 209 F.2d 286. Petitioner, however, requests us to reconsider the point, urging that it was not fully argued in the Peoples case or necessary to that decision. Perhaps the Peoples case could have been decided on a different ground—but it was not. This court in a carefully-considered and well-reasoned opinion specifically held that "The Commission had authority to adopt a nationwide television allocation plan. The purposes of the creation of the Commission, as expressed by Congress, and the mandates pursuant to the purposes, enumerated at great length in the statute, fur-

nish ample support for this action." 1953, —— U.S.App.D.C. at page ——, 209 F.2d at page 287. After considering petitioner's arguments, we have again come to the conclusion expressed in the Peoples case.

■ Petitioner's main reliance is on Section 307(b) of the Federal Communications Act which, it says, requires that frequencies be assigned only upon the receipt of specific applications therefor. Section 307(b) provides: "In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same." 48 Stat. 1083, as amended, 49 Stat. 1475, 47 U.S.C.A. § 307(b). Power is thus conferred to distribute frequencies in response to individual applications. Of course, the Commission under its new plan grants a television license only upon application therefor: if there is no application, no license issues. The question is: Can the Commission define in advance the conditions upon which licenses will issue, and define them so as to confine all applicants in a given community to a specified frequency or frequencies?

Section 307(b) must be read in the light of Section 303 of the Act, which gives the Commission the power to:

"(d) Determine the location of classes of stations or individual stations;

\* \* \* \* \*

Proposed Rule Making." Appendices C and D, attached to the third notice, contained a proposed table of television channel assignments. Channel 10 was tentatively assigned to Terre Haute, Indiana. Petitioner submitted a counterproposal requesting the assignment of Channel 10 to Logansport, Indiana, and Owensboro, Kentucky, rather than to Terre Haute. It submitted a Written Presentation in Lieu of Hearing and later a Brief in Support of its Counterproposals. On April 14, 1952, after consideration of these—

and other—counterproposals the Commission issued its Sixth Report and Order in which the assignment of Channel 10 to Terre Haute, Indiana, was finalized. Petitioner then filed a Petition for Rehearing which, on October 10, 1952, was denied by a Memorandum Opinion and Order. Petitioner seeks review of these orders.

3. An allocation plan was, however, utilized in the distribution of FM radio frequencies.

"(f) Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this Act * * * ;

\* \* \* \* \*

"(r) Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this act * * *." 48 Stat. 1082, 47 U.S. C.A. § 303.

██ The fair interpretation of Sections 303 and 307(b), when read together, is that the Commission may allocate channels among communities either by passing upon specific applications or by way of rule making. Situations are not infrequent in which an administrative agency can properly proceed either through rule making or adjudication: in such a case, the choice "is one that lies primarily in the informed discretion of the administrative agency." Securities and Exchange Commission v. Chenery Corporation, 1947, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 1760, 91 L.Ed. 1995. After its experience in distributing FM radio frequencies pursuant to an allocation plan, and distributing AM frequencies in response to specific applications, the Commission has decided that by means of an allocation plan a more equitable distribution of television channels can be effected. We do not think this was an abuse of discretion. We again sustain the Commission's present plan of allocation.

 Petitioner also attacks the instant proceeding on the somewhat inconsistent ground that it was essentially adjudicatory and that, as a result, formal findings and conclusions were necessary.[4] The Sixth Report and Order, however, allocated television channels to communities throughout the entire country. On the basis of that general plan individual applications were to be adjudicated. To be sure the overall plan would vitally affect later individual adjudications. But rule making is not transformed into adjudication merely because the rule adopted may be determinative of specific situations arising in the future. See American Broadcasting Co. v. United States, D.C.S.D.N.Y.1953, 110 F.Supp. 374. A "rule" is defined in Section 2(c) of the Administrative Procedure Act[5] as: " * * * the whole or any part of any agency statement of general or *particular* applicability and *future effect* designed to implement, interpret, or prescribe law or policy * * *." (Emphasis added.) Clearly, the instant plan had a future rather than a present or past effect.

██ Petitioner further objects to the procedure followed by the Commission in its rule making. It contends that Section 4(b) of the Administrative Procedure Act requires the Commission, at the conclusion of a rule making proceeding, to issue a statement demonstrating that it has considered all relevant evidence presented to it. It argues that the Commission's Final Report and Order did not do so. But the statute says only that "the agency shall incorporate in any rules adopted a concise general statement of their basis and purpose."[6] This the Commission certainly did. It compared the populations of Logansport, Owensboro and Terre Haute; and in its Memorandum Opinion denying Logansport's petition for rehearing it discussed the relative importance of these cities as evidenced by amount of retail and wholesale sales, number of retail and wholesale establishments, the number of manufacturing establishments, the number of persons employed by manufacturing establishments, and the dollar value of their manufactures. It must be remembered that in the rule making proceeding there were over 1,500 submissions of evidence and over 350 controverted allocations.

---

4. Reliance is placed on Section 8(b) of the Administrative Procedure Act, 60 Stat. 242, 5 U.S.C.A. § 1007(b).

5. 60 Stat. 237, 5 U.S.C.A. § 1001(c).

6. 60 Stat. 238, 5 U.S.C.A. § 1003(b); see Sen.Doc.No. 248, 79th Cong., 2d Sess., 251, 259 (1946).

To require the Commission, in its Final Report and Order, to discuss each particular bit of evidence presented would be to impose upon it a totally unnecessary burden.[7]

Petitioner complains also of an alleged abandonment of the "priorities" published by the Commission in advance of the rule making.[8] These priorities were to guide the parties in their submissions of evidence and the Commission in its distribution of channels. As one of its reasons for assigning VHF Channel 10 to Terre Haute the Commission stated that it had decided to assign, in so far as practicable, VHF channels to the larger cities. Such a consideration was not mentioned in the published priorities. Petitioner characterizes this as changing the rules in the middle of the game. It argues that this additional consideration adopted by the Commission after all evidence was submitted violated the notice requirements of Section 4(a) of the Administrative Procedure Act.[9] That section, however, requires only that the prior notice include "a description of the subjects and issues involved." We think the procedure followed by the Commission amply fulfilled this requirement. The "priorities," moreover, clearly appear to have been intended as guides, not as inflexible, unchangeable rules. Surely every time the Commission decided to take account of some additional factor it was not required to start the proceedings all over again. If such were the rule the proceedings might never be terminated.[10]

Finally, petitioner alleges that the assignment of VHF Channel 10 to Terre Haute was, on the merits, erroneous in that it did not provide a fair and equitable distribution of service. In regard to this objection it suffices to say that our review satisfies us that the assignment was supported, in this respect, by substantial evidence, and was clearly within the Commission's statutory authority. That being so, this court's duty is at an end. National Broadcasting Co. v. United States, 1943, 319 U.S. 190, 224, 63 S.Ct. 997, 87 L.Ed. 1344.

For these reasons, the orders under review will be

Affirmed.

---

7. Petitioner also contends that the Commission failed to consider all relevant evidence presented to it—as required by Section 4(b) of the Administrative Procedure Act. We see no merit in this contention. Nothing has been brought to our attention indicating that the Commission failed to consider any relevant evidence.

8. In Appendix A to its Third Notice of Further Proposed Rule Making, the Commission set forth "the principles, in terms of priority, which form the basis of the Table of Assignments," in the following fashion:

"Priority No. 1—To provide at least one television service to all parts of the United States.
"Priority No. 2—To provide each community with at least one television broadcast station.
"Priority No. 3—To provide a choice of at least two television services to all parts of the United States.
"Priority No. 4—To provide each community with at least two television broadcast stations.
"Priority No. 5—Any channels which remain unassigned under the foregoing priorities will be assigned to the various communities depending on the size of the population of each community, the geographical location of such community, and the number of television services available to such community from television stations located in other communities."

9. 60 Stat. 238, 5 U.S.C.A. § 1003(a).

10. Substantially the same considerations apply in regard to a similar complaint made of the increase in maximum antenna heights and power allowed by the Commission's Final Order.