**STORER BROADCASTING COMPANY,**
Petitioner,

v.

**UNITED STATES of America, and the
Federal Communications Commission, Respondents.**

No. 12065.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1954.

Decided Feb. 24, 1955.

Mr. Albert R. Connelly, New York City, with whom Messrs. Thomas H. Wall, Washington, D. C., and George B. Turner, New York City, were on the brief, for petitioner. Messrs. Fred W. Albertson and Clair L. Stout, Washington, D. C., entered appearances for petitioner.

Mr. Daniel R. Ohlbaum, Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, Harrison, Ark., were on the brief, for respondents. Messrs. Charles H. Weston, Atty., Department of Justice, and J. Roger Wollenberg, Richard A. Solomon and Richard J. Snider, Counsel, Washington, D. C., Federal Communications Commission, entered appearances for respondents.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Storer Broadcasting Company filed with the Federal Communications Commission August 31, 1953, an application for a new television station in Miami, Florida. Storer was then already licensed to own and operate five standard broadcast and five frequency modulation broadcast stations, located in Atlanta,

Detroit, Miami, Toledo and Wheeling; and three television stations, located in Atlanta, Detroit and Toledo. Its wholly-owned subsidiaries were then licensed to own and operate standard broadcast and television stations in Birmingham and San Antonio.

In a proceeding initiated some years before by issuance of a notice of proposed rule making, in which Storer participated, the Commission entered an order November 25, 1953, promulgating amended "multiple ownership" rules, which are now §§ 3.35, 3.240 and 3.636 of its Rules and Regulations. On the same day the Commission dismissed Storer's application for a television station in Miami, without a hearing and without consideration on the merits, on the ground that its grant would be in violation of the spirit and purpose of the multiple ownership rules.

Storer petitions for review, asking that we declare unlawful and without force or effect the Commission's rule making order of November 25, 1953, together with the amended multiple ownership rules promulgated thereby, insofar as and to the extent that the order and rules

"(a) Deny the right to a full and fair hearing to determine whether ownership, operation or control of more than seven (7) standard radio, seven (7) FM radio, and five (5) television broadcast stations, upon application therefor, will serve the public interest, convenience or necessity.

"(b) Provide that ownership of one (1%) per cent or more of the voting stock of a corporation shall be considered as equivalent to ownership, operation or control of such station in determining the existence of a concentration of control contrary to the public interest, convenience or necessity."

The multiple ownership rules are challenged here only insofar as they impose an absolute limitation upon the number of standard, FM and television broadcast stations which may be owned, operated or controlled by a single individual or corporation. The three rules under attack are similar except for the differing maximum numbers of stations which are permitted,—seven in standard, seven in FM, and five in television. We quote as typical the television broadcast rule, § 3.636:

"Section 3.636 *Multiple Ownership*—(a) No license for a television broadcast station shall be granted to any party (including all parties under common control) if

"(1) such party directly or indirectly owns, operates, or controls another television broadcast station which serves substantially the same area; or

"(2) such party, or any stockholder, officer or director of such party, directly or indirectly owns, operates, controls, or has any interest in, or is an officer or director of any other television broadcast station if the grant of such license would result in a concentration of control of television broadcasting in a manner inconsistent with the public interest, convenience, or necessity. In determining whether there is such a concentration of control, consideration will be given to the facts of each case with particular reference to such factors as the size, extent and location of areas served, the number of people served, and the extent of other competitive service to the areas in question. *The Commission, however, will in any event consider that there would be such a concentration of control contrary to the public interest, convenience or necessity for any party or any of its stockholders, officers or directors to have a direct or indirect interest in, or be stockholders, officers, or directors of, more than five television broadcast stations."* (Italics supplied. The italicized material is common to all three rules.)

Unequivocally, the foregoing rule declares that an application for a television

broadcast station license filed by one who is already licensed for five such stations will be rejected; that the Commission will *in any event* consider that the addition of a sixth station would result in concentration of control contrary to the public interest, convenience or necessity.

This means, of course, that an application for a sixth television station will be denied without a hearing, just as Storer's application was rejected without a hearing and without any consideration of the question whether public interest, convenience or necessity would be served by the grant.

Section 309(a) of the Communications Act* requires the Commission to grant an application for a station license if it finds, upon examination thereof, that public interest, convenience and necessity would be served by the granting thereof. If the Commission is unable so to find, after examining an application, it is required by § 309(b) of the Act to notify the applicant and other known parties in interest of the grounds and reasons for its inability to make such finding. It is further provided that, if the Commission, after considering the applicant's reply to its notice, is still unable to make a favorable finding and so is unable to grant the application without a hearing,

"* * * it shall formally designate the application for hearing on the grounds or reasons then obtaining and shall notify the applicant and all other known parties in interest of such action and the grounds .and reasons therefor, specifying with particularity the matters and things in issue but not including issues or requirements phrased generally. * * * Any hearing subsequently held upon such application shall be a full hearing in which the applicant and all other parties in interest shall be permitted to participate but in which both the burden of proceeding with the introduction of evidence upon any issue specified .by the Commission, as well as the

burden of proof upon all such issues, shall be upon the applicant."

 This is mandatory language. The Supreme Court said in Ashbacker Radio Corp. v. F. C. C., 1945, 326 U.S. 327, 330, 66 S.Ct. 148, 149, 90 L.Ed. 108:

"* * * § 309(a) not only gives the Commission authority to grant licenses without a hearing, but also gives applicants a right to a hearing before their applications are denied. * * *"

Again, 326 U.S. at page 333, 66 S.Ct. at page 151, the Court said:

"* * * Congress has granted applicants a right to a hearing on their applications for station licenses. Whether that is wise policy or whether the procedure adopted by the Commission in this case is preferable is not for us to decide. * * *"

Moreover, the denial of a hearing granted by statute is a denial of due process of law. L. B. Wilson, Inc., v. F. C. C., 1948, 83 U.S.App.D.C. 176, 170 F.2d 793.

 This does not mean, however, that any person who applies for any frequency at any location is entitled to a hearing before his application may be denied, for there are situations in which the Commission may reject an application without a hearing. For example, if an applicant admits he is an alien, his application will be denied without a hearing because he is disqualified by statute; or, if he denies he is an alien but is found to be such after a hearing conducted on that issue, his application will be dismissed without further hearing.

 If an application seeks a license for an unlawful use or purpose, it will be rejected without a hearing. F. C. C. v. American Broadcasting Co., 1954, 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699.

 Moreover, if an applicant applies for a certain frequency at a location to which that frequency has not been as-

* 47 U.S.C.A. § 309(a).

signed, his application will be dismissed without a hearing as not conforming to the Commission's master plan—arrived at through one master hearing—for the allocation of television frequencies, under which at least one television channel has been assigned to each of over one thousand cities and towns throughout the nation. The actual assignment of channels to operators is by application, but all applications for licenses not conforming to the overall plan are automatically dismissed. This plan was upheld by us in Peoples Broadcasting Co. v. United States, 1953, 93 U.S.App.D.C. 78, 209 F.2d 286, and in Logansport Broadcasting Corp. v. United States, 1954, 93 U.S.App.D.C. 342, 210 F.2d 24.

In the latter case we said, 93 U.S.App. D.C. at page 345, 210 F.2d at page 27:

"The fair interpretation of Sections 303 and 307(b), when read together, is that the Commission may allocate channels among communities either by passing upon specific applications or by way of rule making. Situations are not infrequent in which an administrative agency can properly proceed either through rule making or adjudication: in such a case, the choice 'is one that lies primarily in the informed discretion of the administrative agency.' Securities and Exchange Commission v. Chenery Corporation, 1947, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 1760, 91 L.Ed. 1995. After its experience in distributing FM radio frequencies pursuant to an allocation plan, and distributing AM frequencies in response to specific applica-

tions, the Commission has decided that by means of an allocation plan a more equitable distribution of television channels can be effected. We do not think this was an abuse of discretion. * * *"

In the light of such exceptions to the apparently unqualified generality of § 309(b), the statutory provision means that any citizen who seeks a license for the lawful use of an available frequency has the undoubted right to a hearing before his application may be rejected.[1]

The rule in question here is not a mere announcement that the Commission has adopted the policy of considering, in every case in which the owner of five television stations applies for an additional license, whether the grant thereof would result in such concentration of control as to be adverse to the public interest. The rule goes further and says the Commission will "in any event" treat the numerical limit as the boundary of public interest, and will deny a hearing to the owner of five television stations upon his application for an additional station. Thus the Commission freezes into a binding rule a limitation upon its consideration of the public interest in a respect in which the facts and circumstances may differ widely from case to case. It has decided *in vacuo* that there can never be an instance in which public interest, convenience and necessity would be served by granting an additional license to one who is already licensed for five television stations. The power so to decide has not been committed to the Commission.[2]

---

1. Cf. Stahlman v. F. C. C., 1942, 75 U.S. App.D.C. 176, 126 F.2d 124.

2. Cf. the Stahlman opinion, cited in footnote 1, in which Judge Groner said, 75 U.S.App.D.C. at page 179, 126 F.2d at page 127:

"If in this case it had been made to appear, as counsel for appellant insist, that the Commission's investigation was solely for the purpose of the consideration or adoption of a hard and fast rule or policy, as the result of which newspaper owners may be placed in a proscribed class and thus made ineligible to apply for or receive broadcast licenses, we should be obliged to declare that such an investigation would be wholly outside of and beyond any of the powers with which Congress has clothed the Commission. For we have previously held that there is nothing in the Act which either prevents or prejudices the right of a newspaper, as such, to apply for and receive a license to operate a radio broadcast station. Tri-State Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 292, 96 F.2d 564. Further consideration confirms that view."

It is conceivable that in some circumstances, common ownership of even five television stations, though permitted by the challenged rule, might be undue concentration of control; while in other circumstances, common ownership of a greater number might be compatible with the public interest. But whether so or not must be determined on an *ad hoc* basis, after consideration of all factors relevant in the determination of whether the grant of a license would be within the comprehensive concept which the Act calls "the public convenience, interest, or necessity." Cf. Scripps-Howard Radio, Inc., v. F. C. C., 1951, 89 U.S.App.D.C. 13, 189 F.2d 677, as to the broad scope of the concept. The selection of a certain number, such as five or seven, as a maximum beyond which no multiple owner will be permitted to go regardless of what he may be able to show in his own behalf, is not only inconsistent with but is contrary to the mandatory provisions of § 309(b) of the Act and, with respect to the applicants described in the rule, would in effect repeal or nullify that important section.

The Commission argues that the challenged rules[3] carry out its established policy of encouraging as many qualified persons as possible to seek broadcast licenses, as the public interest requires maximum diversification of program and service viewpoints; and that they also carry out the general policy of favoring competition which Congress wrote into the Communications Act. The multiple ownership rules are, the Commission says, "therefore a formulation of *Commission* policy in the licensing of stations, which is based in part upon enunciated Congressional policy applicable to radio broadcasting." We are not here concerned with the Commission's *policy* in passing upon applications. We are concerned with what purports to be a binding rule.

However laudable its policies may be, we have seen that the Commission is bound by its own statute and by the requirements of due process to grant a full hearing before denying an application for an available frequency sought by a citizen for a lawful use. We hold invalid the portion of § 3.636 of the Commission's Rules which we italicized in quoting it at length earlier in this opinion, and direct that it be eliminated therefrom. This holding will not prevent the Commission from considering in each case, in accordance with its announced policy, the question whether granting an additional license to one who is already a multiple owner would place too much control in one licensee, contrary to the public interest. But the multiple owner applicant must be given a chance in a hearing to show, if he can, that still another station will not give him such control of communications media as to prejudice the interests of the public.

This proceeding, being on petition for review of the rule making order of November 25, 1953, filed under § 402(a) of the Act, does not bring before us the order of the same date which denied the application of Storer Broadcasting Company for a television station license at Miami—which order was appealable under § 402(b). But, in view of our holding here, the Commission probably will *sua sponte* set aside the order of denial and grant Storer a hearing.

Challenged rule modified and case remanded.

---

**3.** Although only § 3.636 of the Commission's Rules, concerning multiple ownership of television stations, is directly involved here, the parties have treated the case as though all three sections of the multiple ownership rules were under direct attack. As the challenged portion of § 3.636 appears *verbatim* in the other two sections, it would of course be held invalid should occasion arise to consider it on the complaints of multiple owners of AM and FM stations.