COASTAL BEND TELEVISION COMPANY, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Gulf Coast Broadcasting Company, Intervenor.

COASTAL BEND TELEVISION COMPANY, Petitioner,

v.

The UNITED STATES of America, Federal Communications Commission, Respondents,

Gulf Coast Broadcasting Company, Intervenor.

MONONA BROADCASTING COMPANY, Bartell Television Corporation, Petitioners,

v.

UNITED STATES of America, Federal Communications Commission, Respondents,

Radio Wisconsin, Incorporated, Winnebago Television Corporation, Intervenors.

MONONA BROADCASTING COMPANY, Bartell Television Corporation, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Radio Wisconsin, Incorporated, Winnebago Television Corporation, Intervenors.

PREMIER TELEVISION, Inc., Ohio Valley Television Company, Petitioners,

v.

UNITED STATES of America, Federal Communications Commission, Respondents,

Evansville Television, Inc., Intervenor.

PREMIER TELEVISION, Inc., Ohio Valley Television Company, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Evansville Television, Inc., Intervenor.

MID–AMERICA BROADCASTING CORPORATION, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Evansville Television, Inc., Intervenor.

MID–AMERICA BROADCASTING CORPORATION, Petitioner,

v.

UNITED STATES of America and Federal Communications Commission, Respondents,

Evansville Television, Inc., Intervenor.

Nos. 13034, 13035, 13038, 13039, 13056–58, 13065.

United States Court of Appeals District of Columbia Circuit.

Argued April 18, 1956.

Decided June 7, 1956.

Mr. Paul Dobin, Washington, D. C., for appellant in No. 13,034 and petitioner in No. 13,035. Mr. Stanley S. Neustadt, Washington, D. C., also entered an appearance for appellant in No. 13,034 and petitioner in No. 13,035.

Mr. Benito Gaguine, Washington, D. C., for Monona Broadcasting Company, petitioner in No. 13,038 and appellant in No. 13,039. Mr. Samuel Miller, Washington, D. C., was on the brief for Bartell Television Corporation, petitioner in No. 13,038 and appellant in No. 13,039.

Mr. J. Roger Wollenberg, Washington, D. C., with whom Mr. Andrew G. Haley, Washington, D. C., was on the brief, for petitioners in Nos. 13,056 and 13,065, and appellants in Nos. 13,057 and 13,058. Mr. Michael H. Bader, Washington, D. C., also entered an appearance for petitioners in Nos. 13,056 and 13,065, and appellants in Nos. 13,057 and 13,058.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, General Counsel, and Daniel R. Ohlbaum and Henry Geller, Counsel, Federal Communications Commission, were on the brief, for Federal Communications Commission, appellee in Nos. 13,034, 13,-039, 13,057 and 13,058, and respondent in Nos. 13,035, 13,038, 13,056 and 13,065. Mr. Daniel M. Friedman, Atty., Dept. of Justice, entered an appearance for the United States of America, respondent in Nos. 13,035, 13,038, 13,056 and 13,065.

Mr. Paul M. Segal, Washington, D. C., with whom Messrs. Robert A. Marmet, George S. Smith and Philip J. Hennessey, Jr., Washington, D. C., were on the brief,

for intervenor in Nos. 13,034 and 13,035, urged affirmance.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for intervenor Winnebago Television Corporation, intervenor in Nos. 13,038 and 13,039, urged reversal.

Mr. Arthur W. Scharfeld, Washington, D. C., for intervenor Radio Wisconsin, Inc., in Nos. 13,038 and 13,039, urged affirmance.

Mr. Vincent A. Pepper, Washington, D. C., with whom Mr. Vincent B. Welch was on the brief, for intervenor in Nos. 13,056, 13,057, 13,058 and 13,065, urged affirmance. Mr. Robert N. Green, Washington, D. C., also entered an appearance for intervenor in Nos. 13,056, 13,057, 13,058 and 13,065.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

WASHINGTON, Circuit Judge.

These cases involve the UHF–VHF television controversy. We had occasion to deal with the matter at an earlier stage, when the petitioning UHF stations sought a stay of orders of the Federal Communications Commission. A panel of the court denied the stay, in a brief opinion, one judge dissenting. Coastal Bend Television Co. v. Federal Communications Commission, 1956, 97 U.S.App. D.C. 339, 231 F.2d 498. Thereafter, the whole court decided that the cases should be consolidated for purposes of argument, and should be heard en banc on the merits. The opinion on the stay matter recited many of the relevant facts, and not all of these need be repeated here. But, for the purposes of our discussion of the merits, we think we should give some additional background.

In 1952 the Federal Communications Commission, after a rule-making proceeding lasting several years, issued its Sixth Report and Order, 17 Fed. Reg. 3905, 1 Pike & Fischer R.R. 91:599, which allocated television channels among various communities throughout the United States. In Peoples Broadcasting Co. v. United States, 1953, 93 U.S.App.D.C. 78, 209 F.2d 286, and Logansport Broadcasting Corp. v. United States, 1954, 93 U.S.App.D.C. 342, 210 F.2d 24, we upheld the power of the Commission to make this allocation by a rulemaking rather than an adjudicatory proceeding. One of the problems faced by the Commission in making the 1952 allocation was the relationship between very high frequency (VHF; Channels 2–13) and ultra high frequency (UHF; Channels 14–83) transmission. For our purposes, the distinctions between these two types of services may be summarized as follows: With a given antenna height and power, a VHF signal reaches a considerably greater distance than a UHF signal; a set capable of receiving both VHF and UHF is more expensive than one designed to receive only VHF; and somewhat different antenna characteristics are required to receive the two types of signals. Prior to 1952, the Commission had allocated only VHF channels. After deciding to allocate UHF channels also, the Commission was faced with the problem of whether to have both VHF and UHF channels allocated in the same communities ("intermixture"), or to have some communities all UHF and others all VHF. After careful consideration of the pertinent factors, the Commission decided in favor of intermixture. Sixth Report and Order, at paragraphs 189–200, 17 Fed. Reg. 3926–27, 1 Pike & Fischer R.R. at 91:661–65.

Petitioners and appellants here, as well as intervenor Winnebago Television Corporation (all of whom will henceforth be referred to as petitioners), all applied for and received without comparative hearings licenses to operate UHF stations pursuant to the 1952 allocation of channels. The intervenors here—other than Winnebago—all applied for VHF channels, for which, because there were other applicants, comparative hearings were required. The effect was that each of these UHF stations was able to go on

the air at a time when it did not face VHF competition.

By autumn of 1954, the VHF comparative hearings had been completed, initial decisions had been rendered, and the cases were before the Commission for argument and decision. At this juncture, petitioners (the UHF operators) sought from the Commission a change in the Commission's channel allocation rule so that the communities in which they operated would be "deintermixed" (i. e., the commercial channels allocated to the community would be made all VHF or all UHF).[1] Other UHF operators had also submitted deintermixture petitions. In March and April, 1955, the Commission selected five communities as to which deintermixture petitions had been filed and instituted rule-making proceedings concerning them, with a view towards using these proceedings as a "pilot" study of the intermixture problem. In the meantime, it withheld grants of VHF channels in these communities.

On November 10, 1955, the Commission rejected petitioners' request for immediate deintermixture. Its Report and Order, 20 Fed. Reg. 8495, 13 Pike & Fischer R.R. 1511, stated that the scope of the proceedings had been too limited to find solutions of lasting value, that the problem was nationwide, and that considerations of both fairness and practicability precluded any approach limited to the few communities which had been involved in the pilot rule-making proceeding. The Commission therefore instituted a general rule-making proceeding to deal with the UHF–VHF problem.

The Commission's Report and Order dealt specifically with the petitioners' request for a halt to action on applications for construction permits for new television stations pending final decision of the intermixture problem. The Commission found that such action "would be tantamount to a freeze on authorizations for new television stations" and would not be in the public interest. It also found "that it would not be justified in withholding action, pursuant to our present allocation plan and rules, that would bring additional television service to a significant number of people."

Petitioners also filed a number of petitions with respect to the comparative hearings for VHF construction permits in their areas. In general these petitions sought intervention in the comparative hearings and stays of them pending final action on deintermixture. The requests to intervene were denied by the Commission as untimely, and because the issue sought to be raised related to Commission rules of general applicability—i. e., the allocations table—rather than the comparative issues involved in the adjudicatory proceeding. The stays were denied by the Commission on the ground that it was not in the public interest to preclude the availability of additional television service pending an ultimate decision on deintermixture and because grants of the applications for VHF channels were consistent with the public interest determinations expressed in the existing rules and regulations.

■■■ The petitioners now come to us to set aside these sundry actions of the Commission. We adhere to the view taken, with one dissent, by the panel of this court which denied motions for stays in these cases, that we may not do so. Coastal Bend Television Co. v. Federal Communications Commission, supra. Petitioners' basic contention, presented in a number of forms, is that some of the hopes on which the Commission based its 1952 allocation, particularly as to set and antenna conversions and manufacture of all-channel receivers, have not

---

1. Petitioners based their case for deintermixture on the hypothesis that UHF could not survive in a community with commercial VHF, and pointed to the difficulties UHF stations were having in intermixed communities. Intervenors contend, however, that petitioners' status is not analogous to that of UHF stations in communities where a VHF station was on the air when the UHF stations went on, because in petitioners' communities there is already virtually 100 per cent saturation of sets and antennas capable of receiving UHF.

been realized, and that therefore the 1952 allocation has now become contrary to the "public convenience, interest, or necessity" and fails to "encourage the larger and more effective use of radio in the public interest." Section 303, Federal Communications Act, 48 Stat. 1082, as amended, 47 U.S.C.A. § 303. But we think that the Commission's decision to adhere to the 1952 allocation for the time being, as reflected in its refusal to institute a "freeze" on construction permits for VHF stations to prevent competition with existing UHF stations, is well within its statutory authority: its decision was based on its finding that the VHF stations would bring additional television service to a significant number of people. True, there would be loss to the public if VHF competition should destroy existing UHF stations before the current rule-making proceeding decides the ultimate fate of UHF television. But whether one factor should outweigh the other is precisely the sort of question which Congress, by employing the broad language of Section 303, wished to commit to the discretion of an expert administrative agency, not the courts. It is for the Commission, not the courts, to pass on the wisdom of the channel allocation scheme. National Broadcasting Co. v. United States, 1943, 319 U.S. 190, 224–25, 63 S.Ct. 997, 87 L.Ed. 1344. So long as the Commission's action in such an area of discretion has a reasonable factual and legal basis, we may not overturn it. National Labor Relations Board v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377; cf. Securities & Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S. Ct. 1575, 91 L.Ed. 1995. And we clearly should not compel the Commission to delay existing adjudicatory proceedings conducted in accordance with the statute and valid regulations thereunder in order to await the outcome of rule-making proceedings. Federal Communications Commission v. WJR, 1949, 337 U.S. 265, 272, 69 S.Ct. 1097, 93 L.Ed. 1353.

Petitioners attack the denial of intervention in the adjudicatory proceedings. As we noted above, the hearings in these proceedings had been completed, and initial decisions rendered in the autumn of 1954, long before petitioners sought to intervene. We do not think the Commission abused its discretion in denying intervention when the only purpose was to argue the very points that had been argued to the Commission and rejected by it in the rule-making proceeding culminating in the November 10, 1955, Report and Order.

Finally, petitioners challenge the awards of construction permits for the VHF stations. Since we have already determined that the Commission's 1952 channel allocation and its decision not to freeze awards of construction permits in accordance with the 1952 allocation are valid, it follows that an adjudication that conforms to the 1952 allocation is valid; the public interest factors, which are the only substantive basis of petitioners' attack on the adjudications, are determined by the 1952 Report and Order and the November 10, 1955, Report and Order.[2] Similarly, the only procedural attacks on the adjudication are identical with the bases of the appeal from the denials of the petitions relating to the adjudications, which we have already discussed.

For these reasons, we affirm the orders of the Commission. In view of this disposition of the cases, objections to the procedures followed by the petitioners, raised by the Commission and the other successful parties hereto, need not be considered here. Cf. Inland Empire District Council, etc., v. Millis, 1945, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877.

So ordered.

BAZELON, Circuit Judge, concurs in the result.

---

2. We recognized in Logansport Broadcasting Corp. v. United States, supra, 93 U.S. App.D.C. at page 345, 210 F.2d at page 27, that the allocation rule would have a controlling effect on some issues in future adjudications. And see United States v. Storer Broadcasting Co., 76 S. Ct. 763.