236 F.2d 727
 98 U.S.App.D.C. 432
 VAN CURLER BROADCASTING CORPORATION, Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents, Hudson Valley
Broadcasting Company, Inc., Intervenor.
GREYLOCK BROADCASTING COMPANY, Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents, Hudson Valley
Broadcasting Company, Inc., Intervenor.
 Nos. 12987, 12989.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 20, 1956.
Decided July 9, 1956.
 
 [98 U.S.App.D.C. 433] Mr. Harry M. Plotkin, Washington, D.C., with whom Mr. Paul A. Porter, Washington, D.C., was on the brief, for petitioner in No. 12987.
 Messrs. L. Reed Miller and George Bunn, Washington, D.C., also entered appearances for petitioner in No. 12987.
 Mr. Vernon L. Wilkinson, Washington, D.C., with whom Mr. James A. McKenna, Jr., Washington, D.C., was on the brief, for petitioner in No. 12989.
 Mr. Daniel R. Ohlbaum, Counsel, Federal Communications Commission, with whom Mr. Stanley N. Barnes, Asst. Atty. Gen., Messrs. Daniel M. Friedman and William J. Lamont, Attys., Dept. of Justice, Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for respondents.
 Mr. D. M. Patrick, Washington, D.C., with whom Mr. Stanley S. Harris, Washington, D.C., was on the brief, for intervenor.
 Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.
 PRETTYMAN, Circuit Judge.
 
 
 1
 This matter is closely akin to the cases known here as the Coastal Bend cases,[1] decided June 7, 1956. The factual background recited in the opinion in those cases need not be repeated here. There is a difference. In those cases the petitioners-appellants were UHF licensees complaining of pending grants of VHF licenses in their areas. In the present cases the petitioners, also UHF licensees, are complaining of the allocation of a VHF channel (Channel 10) to a community in their area. The Coastal Bend cases concerned licenses; the present cases concern a channel assignment.
 
 
 2
 Upon a preliminary consideration of Greylock's motion to that effect we stayed the Commission's order so as to preserve, in view of the patently impending damage, the existing status of affairs until the controversy could be briefed and argued and considered by us in due course.[2]
 
 
 3
 Petitioner Greylock owns and operates a UHF television station at North [98 U.S.App.D.C. 434] Adams, Massachusetts, with its transmitter on Mount Greylock in Massachusetts, to the east of the Albany-Troy-Schenectady area. Petitioner Van Curler owns a UHF license for operation in Albany but was not operating at the time of the proceedings in this court. Intervenor Hudson Valley owns and operates a UHF station in Albany. It petitioned the Commission to amend its Table of Assignments of television channels so as to assign Channel 10 to a small community, Vail Mills, northwest of Schenectady. The requested assignment met the Commission's engineering requirements as to distances, etc.[3] After prolonged rule-making proceedings the Commission issued the order here under review, granting the allocation.
 
 
 4
 The Sixth Report of the Commission,[4] which is the presently outstanding basis for the allocation of television channels, was an amendment, pursuant to a rule-making proceeding, of Section 3.606 of the Commission's Rules and Regulations. It provided a Table of Assignments,[5] specifying channels and their community locations, and contained a long explanation of the principles governing the Assignment Table[6] and explanatory provisions in respect to changes in the Table.[7] The Commission specifically called attention to the fact that possible assignments on Channels 2-65 had not been made in the Table,[8] announced that it would follow its assignment spacing requirements in future proceedings dealing with amendments to the Table, and made clear that persons wishing to apply for a channel not specified in the Table would be required to secure an amendment to the Table through appropriate rule-making proceedings before submitting an application for a license.[9] Thus the Sixth Report contemplated and provided for not only a present Table of Assignments but also future amendments to that Table by the assignment of additional channels to communities under specified rules and policies.
 
 
 5
 The procedure outlined in the Sixth Report was followed in the present matter. An application for a rule-making proceeding to amend the Table of Assignments by the additional assignment of Channel 10 to Vail Mills was made, the procedure prescribed by the Administrative Procedure Act for rule-making was followed, and the Table of Assignments was amended by the order here under review.
 
 
 6
 In its report and order the Commission recited that the proposed assignment was consistent with its rules and the principles of its present television allocations, and that it would not be justified in withholding action which would bring additional service to a significant number of people. It said Channel 10 at Vail Mills would represent a second service to an appreciable percentage of the families in the area and a first service to a significant number of families. Since this was a rule-making and not an adjudicatory proceeding, the Commission was required to make merely 'a concise general statement of their (i.e., the rules') basis and purpose.'[10]
 
 
 7
 The grant of a license on the newly assigned channel is not before us, no application for a license having even been filed as yet, so far as this record shows. The matter before us is solely a rule-making.
 
 
 8
 Since the Commission did not summarily depart from established principles or program, but on the contrary followed a course clearly anticipated and provided for in its basic Sixth Report, its action can in no sense be deemed arbitrary or capricious. Since all procedural requirements as to rule-making proceedings [98 U.S.App.D.C. 435] were met, no defect in the order appears in that respect. The conclusion reached by the Commission is clearly stated. The basis and purpose of the order are ample and understandably, even though succinctly, stated and are within the considerations prescribed by the statute as criteria for Commission action.[11] The order is also consistent with the provisions of the act dealing with the distribution of licenses.[12] The given reasons are rational and support the conclusion. Having reached the foregoing conclusions the function of the court is at an end in a case such as this.
 
 
 9
 Petitioners urge that the action of the Commission is invalid because during the course of this proceeding the Commission received and listened to, ex parte, representatives of the Columbia Broadcasting System. But it appears that these calls and conversations were in regard to the nation-wide intermixture problem, concerning which the Commission was seeking all sorts of advice and information preparatory to setting up a general nation-wide rule-making proceeding to deal with intermixture. We find nothing improper or erroneous in the Commission's consideration of these interviews as depicted in this record.
 
 
 10
 Affirmed.
 
 
 11
 BAZELON, Circuit Judge (dissenting).
 
 
 12
 In denying intervenor's motion to reconsider and vacate the stay we had granted herein, we pointed out the potential public injury which could result from authorizing the Channel 10 'drop-in' before the determination of the deintermixture proceeding.[1] We said: 'Greylock urges, and we agree, that every interest of fair distribution will be served by postponing the allocation until the Commission decides, in the proceeding already under way, whether there is to be such an allocation to this area.'[2] And we concluded: 'We find specifically that the present allocation of Channel 10 to the Vail Mills area pending the outcome of the deintermixture proceeding would impose upon Greylock losses which it could not recover, and that this threat of loss is not offset by any vantage to the public interest.'[3]
 
 
 13
 I know of no changed circumstance which impels abandonment of that conclusion.
 
 
 14
 In Coastal Bend we held that, whatever might be the probability that the 1952 station allocations would be deintermixed by the Commission in the current rulemaking proceedings, 'we clearly should not compel the Commission to delay existing adjudicatory proceedings conducted in accordance with the statute and [98 U.S.App.D.C. 436] valid regulations thereunder in order to await the outcome of rule-making proceedings.'[4] We said that 'an adjudication that conforms to the 1952 allocation is valid' and that the public interest factors being urged against the adjudication had necessarily been determined by the Commission in designing the allocation.[5]
 
 
 15
 The case now before us is significantly different from Coastal Bend. The issue it presents is not whether we should prevent the Commission from adhering to the 1952 allocation table pending the outcome of the general deintermixture proceeding; it is rather whether we should permit the Commission to make ad hoc departures from its allocation table in a manner which pre-judges issues pending for determination in the general deintermixture proceeding. Whereas the public interest factors urged by the Coastal Bend petitioners had been determined against them in the adoption of the allocations, those now urged by these petitioners have never been heard or judged, but are now being determined (in practical effect) by way of a departure from the allocations.[6]
 
 
 16
 This predetermination of petitioners' case violates the spirit of Ashbacker Radio Co. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108. That the proceeding referred to in that case was adjudicatory while this one is rule-making does not alter the case. The Commission necessarily makes some of its determinations in rule-making rather than adjudicatory proceedings. We have specifically upheld its power to determine channel allocations by rule-making. Peoples Broadcasting Co. v. United States, 1955, 93 U.S.App.D.C. 78, 209 F.2d 286; and Logansport Broadcasting Corp. v. United States, 1954, 93 U.S.App.D.C. 342, 210 F.2d 24. In so doing, we said that such a rule-making proceeding was not to be treated as an adjudicatory proceeding 'merely because the rule adopted may be determinative of specific situations arising in the future.' Logansport Broadcasting Corp. v. United States, 93 U.S.App.D.C. at page 345, 210 F.2d at page 27. A hall-mark of rule-making, we pointed out, was 'future rather than a present or past effect.' Ibid. It would be most inaccurate to say the action here complained of 'merely * * * may be determinative' of a specific situation. It is avowedly directed at one specific situation. Nor can it be said that the effect of the action is only future, for it will inevitably have a present impact. The conflict between petitioners and intervenor here is whether the Albany-Troy-Schenectady area should become all-UHF, as petitioners desire, or more-VHF than it is, as intervenor desires. The Commission's action here complained of makes the area more-VHF. The network's contracts to supply programs to the station in the area will immediately be affected by the knowledge that there is to be a second VHF station. Furthermore, since a second VHF is likely to destroy the existing UHF stations, viewers, in buying their sets will 'be governed by that circumstance.'[7] Ashbacker holds that, where there are conflicting proposals, it is unfair to grant one and then impose upon the other the [98 U.S.App.D.C. 437] burden of justifying its displacement. That rule, in my judgment, is applicable to the proceeding in this case, whether it be called rule-making or adjudicatory, for Ashbacker will not tolerate procedure which 'may satisfy the strict letter of the law but certainly not its spirit or intent.' 326 U.S. at page 331, 66 S.Ct. at page 150. 'Legal theory is one thing. But the practicalities are different.' Id. 326 U.S. at page 332, 66 S.Ct. at page 151.
 
 
 17
 If the majority means to suggest that the Channel 10 'drop-in' was not a departure from, but rather an implementation of the table of allocations, I cannot agree. The provision in the Sixth Report and Order for amendment of allocations provides no particular support for such a suggestion. Any administrative policy may be changed, whether or not there is a specific provision to that effect. Articulating the possibility of amendment does not support a theory that amendment is adherence rather than departure.
 
 
 18
 EDGERTON, Chief Judge, concurs in this dissent except with respect to petitioner's motion to supplement the record, and for leave to file additional briefs and make further argument.
 
 
 
 [1]
 98 U.S.App.D.C. 251, 234 F.2d 686
 
 
 [2]
 See opinion on Intervenor's Motion to Reconsider and Vacate Stay, Greylock Broadcasting Co. v. United States and Federal Communications Comm'n, 1956, 97 U.S.App.D.C. 414, 231 F.2d 748
 
 
 [3]
 Sec. 3.610, 47 C.F.R. § 3.610, 1 Pike & Fischer Radio Reg. 53:610
 
 
 [4]
 Adopted April 11, 1952, 1 Pike & Fischer Radio Reg. 91:599 et seq
 
 
 [5]
 Report §§ 248-982
 
 
 [6]
 Report §§ 63-200
 
 
 [7]
 Report §§ 201-214
 
 
 [8]
 Report § 29
 
 
 [9]
 Report § 201
 
 
 [10]
 Section 4(b), Administrative Procedure Act, 60 Stat. 238 (1946), 5 U.S.C.A. § 1003(b)
 
 
 [11]
 48 Stat. 1082 (1934), as amended, 47 U.S.C.A. § 303(g) and (r)
 
 
 [12]
 48 Stat. 1083 (1934), as amended, 47 U.S.C.A. § 307(b)
 
 
 [1]
 'No public interest is served by an immediate allocation. Under present allocations the area is predominantly-- seven to one-- UHF. Only one VHF station is operating, and some of the national networks in their competition with one another must use one of the two UHF stations now in operation. The public has bought and is buying its receiving sets in the light of those facts. If the Commission finally decides to leave the area as it is now, the public will buy, or retain, its sets in light of that fact. If the Commission decides to allocate permanently another VHF channel, it seems to be agreed that the UHF stations will fold. The public will thereafter be governed by that circumstance. If a VHF allocation is made temporarily, pending consideration of its permanency, complete public uncertainty is created; both owners and buyers of sets would be thrown into a whirlpool of sales pressures, possibly to no permanent purpose. We see no public benefit in such a completely uncertain temporary arrangement.' Greylock Broadcasting Co. v. United States, 1956, 97 U.S.App.D.C. 414, 416, 231 F.2d 748, 750
 
 
 [2]
 Ibid
 
 
 [3]
 97 U.S.App.D.C. at page 417, 231 F.2d at page 751
 
 
 [4]
 98 U.S.App.D.C. 255, 234 F.2d 690
 
 
 [5]
 Ibid
 
 
 [6]
 Since the argument of this case, the Commission has considered these public interest factors and has promulgated a Report and Order (Docket No. 11532, June 26, 1956) concluding, at least tentatively, that these factors favor the position here asserted by petitioners. The Commission also issued a Notice of Proposed Rule-making (Docket No. 17751, June 26, 1956), proposing, in implementation of the aforesaid Report and Order, to delete Channel 10 from Vail Mills. Following the promulgation of these documents, petitioner Van Curler moved for leave to add them to the record herein and to file additional briefs and make further argument based upon what it considered to be the Commission's change of position. The Court has denied that motion, apparently upon the ground that the Commission's tentative determination that the allocation of Channel 10 to Vail Mills is against the public interest is of no weight in the court's determination of whether that allocation should be sustained. From that action I dissent
 
 
 [7]
 Supra note 1