BELOIT BROADCASTERS, INC.,
Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee

Radio Thirteen-Eighty, Inc., Intervenor.

THIRTEEN–EIGHTY RADIO
CORPORATION

and

KWK Broadcasting Corporation,
Appellants,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee

Radio Thirteen-Eighty, Inc., Intervenor.

Nos. 19908, 19921.

United States Court of Appeals
District of Columbia Circuit.

Argued May 13, 1966.

Decided July 27, 1966.

Mr. David S. Stevens, Washington, D. C., with whom Messrs. James A. Mc-Kenna, Jr., and Thomas N. Frohock, Washington, D. C., were on the brief, for appellant in No. 19,908.

Mr. Jack P. Blume, Washington, D. C., with whom Mr. Howard Jay Braun, Washington, D. C., was on the brief, for appellants in No. 19,921.

Mr. Robert D. Hadl, Counsel, FCC, with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, FCC, also entered an appearance for appellee.

Mr. J. Roger Wollenberg, Washington, D. C., for intervenor.

Before BASTIAN, Senior Circuit Judge, and BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge:

These appeals challenge the Federal Communications Commission's action granting, without hearing, an authorization to Radio Thirteen-Eighty Inc. (RTEI) permitting operation on an interim basis of a broadcast station in St. Louis at 1380 kc and its denial of the competing application of Thirteen-Eighty Radio Corporation.

In 1963 the Commission revoked the license of the St. Louis station previously broadcasting on 1380 kc with 5 kw of power. Thereafter RTEI and Thirteen-Eighty Radio Corporation, among others, applied for interim authority to operate on this frequency in St. Louis, pending action on applications for this channel.

RTEI is a corporation which, at the time the interim grant was made, was owned in equal shares by seven of the original eleven applicants for so-called permanent authorization to operate on 1380 kc in St. Louis with 5 kw of power.[1] RTEI was organized as an open-ended operation; the subscribing shareholders agreed that any other applicant for permanent authority could join on equal terms with the initial members of the group. RTEI's application for interim authorization proposed continued service of 5 kw and the construction of broadcast facilities costing $120,000.

Like RTEI, Thirteen-Eighty Radio Corporation was an applicant only for interim authority; the Commission found, however, that, Thirteen-Eighty Radio Corporation was directly and closely related both to the prior licensee whose license had been revoked and to KWK Broadcasting Corporation, one of the applicants for permanent authority. Although it was open-ended like RTEI, no applicants for permanent authorization had accepted the offer of participation.

■ The Commission may in some circumstances award an interim authorization without holding a hearing if it is clear that the public interest would thus be served.[2] In Community Broadcasting Co. v. FCC,[3] however, we had occasion to note that this public interest finding must be such as to outweigh the prejudicial impact an interim grant might have on the decision on the regular authorization. In that case we held that, absent a hearing, a temporary grant could not be made to a single applicant who was also an applicant for permanent authorization and who proposed an investment of at least $250,000 to build broadcast facilities for interim operation. We observed that such a grant would inevitably tend to influence the Commission in its ultimate decision no matter how much it sought to eliminate that factor from the decision.

We come to the argument of Thirteen-Eighty Radio Corporation, that the grant to RTEI without a hearing violated the standards of *Community Broadcasting*. This contention overlooks the factual setting here, for the grant to RTEI was made under circumstances quite different from those shown in *Community Broadcasting*. The diffused composition of RTEI minimized the likelihood of significant prejudice to the ultimate disposition of the frequency resulting from

1. Mutually exclusive applications were also received for operation in St. Louis on lower power, for an operation on 1390 kc at Louisiana, Mo., 72 miles from St. Louis, and for WBEL to change its nighttime radiation pattern.

2. Peoples Broadcasting Co. v. United States, 93 U.S.App.D.C. 78, 209 F.2d 286 (1953).

3. 107 U.S.App.D.C. 95, 274 F.2d 753 (1960).

an interim grant to it. As a union of seven of the eleven permanent applicants and open to the others,[4] it lacked the identity which gave us cause for concern in the *Community Broadcasting* holding. If performance in the interim period should by any process weigh in the balance, its impact, if any, would redound to the benefit of all the interim participants, thus neutralizing and diffusing its effect. An investment shared among at least seven parties is not likely to enter significantly into the Commission's consideration as might be the case when one applicant has invested a substantial amount of money in building facilities for interim operation.

In addition to the initial character of the organization of RTEI, the Commission required as conditions of the grant to RTEI that it permit participation by persons interested only in interim operation and that nothing should *require* the successful permanent applicant, if a constituent member of RTEI, to purchase its facilities. These two conditions were designed to encourage an even broader participation in the interim operation and thus further reduce the possibility the interim grant would have a significant impact on the utimate decision of the Commission.

Beloit, the licensee of WBEL, operating on 1380 kc in South Beloit, Illinois, claims that no grant of interim authority which would interfere with its signal, as RTEI's does, could be made without a full evidentiary hearing. It argues first that this interference will operate as a modification of its license within the meaning of Section 316[5] and FCC v. NBC (KOA); [6] its second position is that grant of an interim authority to operate a 5-kw facility at 1380 kc in St. Louis has a tendency to predispose the Commission to make such an allocation of 1380 kc

permanent, thus prejudicing its *Ashbacker* hearing rights on the utilization of 1380 kc and violating *Community Broadcasting*.

 Authorization to operate on 1380 kc in St. Louis with the same power as the former licensee did not act as a modification of WBEL's license. WBEL's original license, its subsequent renewals, and its extension of authority to permit night broadcasting all were subject to the pre-existing signal of the St. Louis station on channel 1380.[7] The scope of WBEL's license was determined by the conditions under which it accepted the license; [8] revocation of the St. Louis license on that frequency did not expand the scope of WBEL's license and thus give a valid basis for argument that replacement of the original licensee with RTEI was a modification.

 The record is adequate to sustain the Commission's finding that decision on the permanent allocation of channel 1380 would not be affected significantly by a continuation of the existing service. The Commission could reasonably believe that maintaining the status quo was less likely to affect this decision than was a change in the operation of 1380 kc which would create new broadcasting services.

 The Commission was warranted in concluding that interim operation by RTEI was in the public interest. While the Commission did not explicitly state that it would not take interim operation into consideration in deciding the permanent licensee, the inquiry it conducted and the findings it made indicate it is well aware of the duty we have defined on this score and that the grant to RTEI was conditioned on its members receiving no preference on account of their participation in the interim operation.

Affirmed.

---

4. At time of argument here RTEI was composed of eight of the nine remaining applicants for the St. Louis assignment at 5 kw.

5. 66 Stat. 718 (1952), 47 U.S.C. 316(a) (1964).

6. 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943).

7. South Beloit is 260 miles from St. Louis.

8. Capitol Broadcasting Co. v. FCC, 116 U.S.App.D.C. 370, 324 F.2d 402 (1963).