**WIRL TELEVISION COMPANY,**
Petitioner,

v.

**UNITED STATES of America and Federal Communications Commission, Respondents,**

Tele-Views News Company, American Broadcasting-Paramount Theatres, Inc., Mid Illinois Television Company, Illiway Television, Inc., Hilltop Broadcasting Company, WMBD, Inc., West Central Broadcasting Company, Intervenors.

**WIRL TELEVISION COMPANY,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee, Tele-Views News Company, American Broadcasting-Paramount Theatres, Inc., Mid Illinois Television Company, Illiway Television, Inc., Hilltop Broadcasting Company, WMBD, Inc., West Central Broadcasting Company, Intervenors.**

Nos. 13768, 13769, 13912.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 4, 1957.

Decided March 27, 1958.

Petition for Rehearing Denied May 5, 1958.

Messrs. Ben C. Fisher, Washington, D. C., and Timothy W. Swain, Peoria, Ill., with whom Messrs. Charles V. Wayland, Charles F. Duvall, John P. Southmayd and Richard Hildreth, Washington, D. C., were on the brief, for petitioner in No. 13,768 and appellant in No. 13,769 and No. 13,912.

1. Sections 1 and 30 of the Trademark Act of 1945, 15 U.S.C.A. §§ 1051 and 1112.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, General Counsel, Federal Communications Commission, John J. O'Malley, Jr., Counsel, Federal Communications Commission, and Henry Geller, Attorney, Department of Justice, were on the brief, for respondent in No. 13,768 and appellee in Nos. 13,769 and 13,912. Mr. Daniel R. Ohlbaum, Counsel, Federal Communications Commission at the time record was filed, also entered an appearance for respondent Federal Communications Commission, in No. 13,768. Mr. Daniel M. Friedman, Attorney, Department of Justice, also entered an appearance for respondent United States of America, in No. 13,768.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for intervenor American Broadcasting-Paramount Theatres, Inc., Messrs. Vernon L. Wilkinson and James A. McKenna, Jr., Washington, D. C., also entered appearances for intervenor Tele-Views News Company.

Mr. Harold D. Cohen, Washington, D. C., with whom Mr. W. Theodore Pierson, Washington, D. C., was on the brief, for intervenor WMBD, Inc., Messrs. Vernon C. Kohlhaas and Nad A. Peterson, Washington, D. C., also entered appearances for intervenor WMBD, Inc., in Nos. 13,768 and 13,769.

Messrs. Marcus Cohn and Stanley S. Neustadt, Washington, D. C., were on the brief for intervenors Illiway Television, Inc., and Hilltop Broadcasting Company. Mr. Paul Dobin, Washington, D. C., also entered an appearance for intervenors Illiway Television, Inc., and Hilltop Broadcasting Company.

Messrs. Jack P. Blume and Peter Shuebruk, New York City, were on the brief for intervenor West Central Broadcasting Company.

Mr. Benito Gaguine, Washington, D. C., also entered an appearance for intervenor West Central Broadcasting Company.

Mr. Harry J. Daly and Mrs. Lenore G. Ehrig, Washington, D. C., entered appearances for intervenor Mid Illinois Television Company.

Before PRETTYMAN, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

In 1952, after several years of consideration, the Commission allocated television channels to various areas throughout the country. Peoria, Illinois, was allotted two UHF channels [1] and one VHF channel, channel 8. Two applicants successfully applied for the two UHF channels, began broadcasting in 1953 and are still in operation. Appellant, having no desire to secure a UHF channel, applied for VHF channel 8, the only VHF channel allotted to Peoria, even though, as was expected, there was competition for channel 8. A comparative hearing on channel 8 was begun in the summer of 1953. On June 29, 1956, the Commission affirmed the examiner's initial decision (rendered November 1954) awarding appellant a construction permit for channel 8. However, the permit contained two conditions: (1) construction of the station was to await the outcome of a separate rule making proceeding begun on June 26, 1956, to consider removal of channel 8 from Peoria; and (2) "The Commission may, without further proceedings, substitute for channel 8, such other channel as may be assigned to Peoria." In March 1957, the separate rule making proceedings ended, with the result that channel 8 was removed from Peoria, and two new UHF channels, 25 and 31, substituted. Two months later appellant's license was modified to read UHF channel 25 instead of VHF channel 8. Appellant did not and does not now want a UHF channel, and asks us to direct the Commission to restore channel 8 to Peoria, or at least to require the Commission to hold a full

1. Channels 19 and 43. There was another UHF channel, 37, which was used for educational purposes and is not involved here.

evidentiary hearing, in which the burden of showing the need for removal of channel 8 from Peoria would rest upon the Commission.

The separate rule making proceedings which led to removal of VHF channel 8 from Peoria were held in response to a nationwide problem concerning UHF television in general.[2] We have earlier adverted to Commission proceedings which ended in 1952, and resulted in allocations of television channels throughout the country. In 1952 UHF was believed to have a healthy future[3] and many communities were "intermixed", that is, allotted both UHF and VHF channels, so as to encourage the development of UHF television. It was thought that UHF and VHF could compete effectively with each other. As time passed, however, UHF did not progress as rapidly as had been hoped, and in many "intermixed" areas UHF televisers were in straits,[4] because the audiences, networks and advertisers preferred the superior VHF outlets.[5]

In response to this problem the Commission in 1955 began proceedings to consider the feasibility of "de-intermixture", i. e., making all channels in any one area either VHF or UHF, but not an intermixture of both. The assumption was that UHF (70 channels) had an important place in future broadcasting, because traffic in the near future would probably saturate the limited VHF band (12 channels). Therefore, it was desirable to encourage the development of UHF as rapidly as possible. One way to do this was to remove the competition of VHF in some communities. Twice the Commission considered whether to "de-intermix" Peoria,[6] among several other selected areas, and each time concluded that selective de-intermixture was not a solution to the nationwide problem.

On June 26, 1956, the Commission proposed to explore the possibilities of shifting all or most television broadcasting to the UHF band. The Commission added:

"Since some years would be required in any event for the full implementation of an all-UHF system, the Commission believes that steps should be taken in the meantime to improve the opportunities for effective competition among a greater number of stations. As already indicated, a basic choice in many markets at this time lies between the elimination of VHF channel assignments to create improved opportunities for UHF broadcasting and, alternatively, the assignment of additional local VHF channels."

Consequently, an "interim" proceeding was begun, involving 13 communities, in

2. See Coastal Bend Television Co. v. Federal Communications Commission, 1956, 98 U.S.App.D.C. 251, 234 F.2d 686 (en banc), and cases cited.

3. The Commission said in 1952 that its expectation was "that ultimately the major part of television broadcasting would be carried on in the UHF band. * * *"

4. See Status of UHF Television Stations, Committee on Interstate and Foreign Commerce, 83d Cong.2d Sess. (1954). Some of the problems were cited by the Commission and include the large number of VHF-only sets in use and being manufactured, performance deficiencies of UHF transmitting and receiving equipment during the early years of UHF television broadcasting, and the consequent preference of program and revenue sources for VHF outlets.

5. Peoria was an exception; there the two UHF stations were apparently healthy, partly, no doubt because there was no competition from the VHF channel (8), which remained vacant at all times.

6. In 1955 and 1956. Actually, deletion of channel 8 from Peoria was first proposed in September 1954, by the two Peoria UHF stations. The petition claimed that UHF generally could not compete with VHF, and asked that Peoria be made an all-UHF market. The Commission noted that two parties (of which appellant was one) had spent considerable "time, effort and money" in prosecuting their application for channel 8, and denied the petition for lack of a showing that public interest required deletion of channel 8.

nine of which (including Peoria) it was proposed to delete the existing VHF allocations. In the course of these separate proceedings, appellant, as did a number of others,[7] filed comments relative to Peoria. It urged, *inter alia,* that deletion of Peoria's VHF channel

> "would leave a large area where no other service would be available, and that the UHF stations could, because of local circumstances, compete effectively with one VHF station." [8]

Consideration continued until March 1957, when the Commission decided to remove Peoria's channel 8 and substitute two UHF channels, in addition to the two already operating.[9] Thus, Peoria was finally de-intermixed after three earlier decisions to the contrary. Later (as a logical corollary) appellant's permit for VHF channel 8 was amended without further proceedings to grant UHF channel 25 instead, this right having been expressly reserved in the initial conditional grant of the permit.

■ Appellant raises a number of claims, chiefly that the Commission acted arbitrarily in removing channel 8 from Peoria in the rule making proceeding. The record discloses an impact on this case of two kinds of Commission action—rule making (quasi-legislative) and adjudicative (quasi-judicial).[10] The proceeding on appellant's application for a permit was adjudicative; the proceeding now before us culminating in the deletion of UHF channel 8 from Peoria, was rule making. Appellant's standing to challenge is not the same with respect to both proceedings. We find no error in the adjudicative proceeding and indeed appellant asserts none, except as to the prize to be awarded to the winner. Except that the permit grant was expressly conditioned on the outcome of the rule making proceeding, appellant was granted what it sought.

The net effect of the two proceedings is that appellant received not the VHF channel 8 it wanted but what amounted in a sense to a "consolation prize" in the form of UHF channel 25 which it did not want. But this situation is a consequence of the Commission's exercise of its rule making power and its acknowledged authority to impose the conditions which were contained in the grant of the VHF channel 8 permit.

■ As we said in the Coastal Bend case,[11] "It is for the Commission, not the courts, to pass on the wisdom of a channel allocation scheme," provided the decision has an adequate legal and factual basis and we find such a basis in the present case. The charge of arbitrariness is not well taken. The long range goal of the Commission was to encourage UHF, and removal of potential VHF competition is a rational choice of means to achieve this goal. The short range, or "interim" goal, was to "improve the opportunities for effective competition among a greater number of stations." It was not arbitrary to conclude that the goal would be better approached in Peoria by allotting it four technically equal UHF channels, rather than one superior VHF channel and two inferior UHF channels. Appellant's only hope was to demonstrate, in the rule making proceeding, that public interest required that channel 8 remain in Peoria, or that considerations of fairness to appellant overbalanced the public interest in removal of channel 8. Its views were presented in that proceeding, but were not adopted, and we can see no basis for saying the Commis-

---

7. Including some 40 towns, farm bureaus, labor groups and the Attorney General of Illinois, all of whom opposed deletion of channel 8.

8. Quoted from appellant's brief in the present appeal.

9. Of the other eight communities in which deletion of VHF was proposed, only two actually lost their VHF channel. Two remained in status quo, two actually acquired new VHF channels, and two have not been finally decided.

10. See Administrative Procedure Act, 5 U.S.C.A. § 1001(c) and (d).

11. See note 2 supra [98 U.S.App.D.C. 251, 234 F.2d 690].

sion's decision was beyond its authority, or that the underlying fact findings were not supported by substantial evidence, or that appellant was denied the procedural rights due a protesting party in a rule making proceeding.

We have considered the other contentions of appellant and find in them no basis for reversing the action of the Commission.

Affirmed.