259 F.2d 170
 SPRINGFIELD TELEVISION BROADCASTING CORPORATION and Greenfield Television Broadcasting Corporation, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
The Travelers Broadcasting Service Corporation and The WGBH Educational Foundation, Intervenors.
SPRINGFIELD TELEVISION BROADCASTING CORPORATION and Greenfield Television Broadcasting Corporation, Petitioners,
v.
The UNITED STATES of America and Federal Communications Commission, Respondents,
The Travelers Broadcasting Service Corporation and The WGBH Educational Foundation, Intervenors.
 No. 14050.
 No. 14051.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 7, 1958.
 Decided June 19, 1958.
 
 Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for appellants in No. 14050 and petitioners in No. 14051.
 Mr. Richard A. Solomon, Asst. General Counsel, Federal Communications Commission, with whom Mr. Edgar W. Holtz, Acting General Counsel, Federal Communications Commission, Mr. Charles C. McCarter, Counsel, Federal Communications Commission, and Mr. Daniel M. Friedman, Attorney, Department of Justice, were on the brief, for appellee in No. 14050 and respondents in No. 14051.
 Mr. Percy H. Russell, Washington, D. C., with whom Mr. Aloysius B. McCabe, Washington, D. C., was on the brief, for intervenor The Travelers Broadcasting Service Corporation.
 Mr. Edgar F. Czarra, Jr., Washington, D. C., with whom Mr. Ernest W. Jennes, Washington, D. C., was on the brief, for intervenor The WGBH Educational Foundation.
 Before PRETTYMAN, BAZELON and BASTIAN, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 These cases are a petition to review and an appeal from orders of the Federal Communications Commission. They involve a phase of the UHF-VHF problem in television. The locale involved is a portion of the Connecticut Valley centered about Hartford.
 
 
 2
 Allocation of UHF channels began in 1952 with the Commission's Sixth Report and Order. In the Connecticut-Rhode Island area thirteen UHF stations and four VHF stations were allocated, two of the latter to each state. Channel 3 was assigned to Hartford. The proceeding to award the license was a long comparative one and was not concluded until 1956, when Travelers Broadcasting Service Corporation, intervenor here, was awarded a construction permit. The award was originally conditional, due to the present proceedings, but the condition was later lifted.
 
 
 3
 In the meantime the licenses on the UHF channels, being without contest, were quickly awarded, and the licensees went on the air. In 1954 petitioner-appellant Springfield Television, a UHF operator whose station is at Springfield, Massachusetts, and several other UHF operators in the general area brought proceedings seeking the deletion of the VHF Channel 3 from Hartford. Proceedings were brought twice, and twice the Commission denied deletion. Thereafter came a series of considerations by the Commission revolving about the nationwide problem of VHF-UHF competition. Among other proceedings during this time the Commission instituted a rule-making for the purpose of considering the deletion of Channel 3 from Hartford. The proposal was to shift Channel 3 from Hartford to Providence, Rhode Island, and to substitute in its place a UHF Channel 61. This would have made the Hartford area all UHF except for the one VHF station at New Haven. Proponents and opponents appeared; comments and counter-comments were filed. The Commission issued its Report and Order denying the transfer. After various procedural motions for redetermination, etc., these appeals were taken.
 
 
 4
 The essence of the contentions of petitioner-appellants is that they are existing UHF licensees in this area and that the grant of a second VHF operation at Hartford (Channel 8 being already in use at New Haven) would provide two Grade A or better VHF signals to the area, thus jeopardizing, if not destroying, petitioner-appellants' operations and depriving a number of communities, entirely dependent on UHF, of their only local outlets. Petitioner-appellants say they are entitled to have such issues "resolved" in a rational and not an arbitrary fashion. They say that, where the impact of administrative action on licensed rights is particular and immediate, existing rights cannot be destroyed except by complying with essential minima of procedural due process. They say they did not have due process here, in that the Commission failed "to face up to and rationally dispose of private and public interest matters"; it did not consider what impact a second VHF station in the Connecticut Valley would have on existing UHF stations; and it did not consider whether the destruction of UHF operations would leave numerous substantial cities with no stations of their own (socalled "white areas"), or whether the reservation of Channel 3 for educational purposes or its complete deletion would result in more rather than less service in the Connecticut Valley and in central Massachusetts, or whether Rhode Island needed a third VHF station. They say that rules can be promulgated only after consideration of all relevant matters presented and that, when the Commission fails to mention voluminous data bearing on the public interest or to set forth a rational basis for decision, it is not possible for a reviewing court to perform its review function. They say, in summation, that the Commission's decision was unreasoned and arbitrary.
 
 
 5
 We look at the Report and Order. It contained a recitation of some basic or background material and principles and described the area involved and the existing stations. The high rate of conversion of receiver sets for UHF reception in the vicinity of Hartford indicates that UHF stations render adequate service there, but the Connecticut Valley in general is not suited for such reception on account of its wooded, rough, hilly terrain. The Commission thought, however, that this situation is not as bad as it was painted by those opposing deintermixture. The Commission said that, while on the record[1] it could not estimate with certainty whether a "white area" would exist if Channel 3 were deleted, it was "practically certain" that UHF would not approach the perfection claimed by its proponents. There are without doubt, said the Commission, terrain pockets where UHF reception would not be satisfactory, and a station at Hartford on Channel 3 would fill in those areas; and the number of persons thus affected would be substantial. There is no "white area" in Rhode Island. After some further considerations along the same line the Commission concluded that it could not say Providence had a greater need for Channel 3 or that the move would result in a fairer, more efficient and equitable distribution of facilities.
 
 
 6
 Moreover considerations of the rules respecting minimum transmitter spacings led the Commission to conclude against the move of the channel to Providence. The transmitter of a Channel 3 station operating there would have to be located so far south that it could not provide a principal city signal over all or even a greater part of the city. "This fact alone," said the Commission, "would likewise prevent the proposed assignment."
 
 
 7
 The foregoing is enough to indicate the course followed by the Commission and the nature of its determination.
 
 
 8
 In its order denying reconsideration the Commission was more succinct and emphatic. It stated its conclusion that Channel 3 in Hartford would provide service to "pockets" of white area in Connecticut and Massachusetts and would also be more likely to provide a second service to a substantial number of people. It found that the assignment to Providence or thereabouts would not compensate for the loss of service near Hartford. It recited as another important consideration the fact that the channel could not be used efficiently in Providence or in southern Rhode Island.
 
 
 9
 Before us the Commission emphasizes, rightly, that it is impossible to use rigid criteria as the basis for a decision to deintermix or not to deintermix any particular community, because of the widely varying circumstances in individual markets and the numerous factors which bear on the choice in each area. This is a simple factual truth. The problem is an evaluation of factors, differing in each situation. Congress put that evaluation primarily in the hands of its agent, the Commission. It did not authorize the courts to reappraise the merits of such conclusions.
 
 
 10
 In respect of petitioner-appellants' contentions we must note that Channel 3 was assigned to Hartford at the same time their UHF stations were allocated there; they took their licenses with full knowledge of the situation; they are trying to change an allocation which has existed as long as have theirs. So their argument in respect to the effect of this long-delayed grant on existing operations is unimpressive. The only difference between them is that their grants were made quickly and this one was contested by other applicants. In the next place we note that the Commission followed the procedural requirements for rule-making, and this was a rule-making proceeding. In the third place we think the conclusions of the Commission were not only rational but reasonable. The VHF station at Hartford had benefits for the area, and the move to Providence would have been fraught with many practical difficulties. This latter seems tacitly admitted by petitioner-appellants when they suggest that this channel might be deleted entirely or reserved for educational purposes. We do not find the orders of the Commission arbitrary, unreasonable, or without ample support.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Commission also pointed out that the making of a completely certain record on the point would entail prohibitive time and expense
 
 
 
 12
 BAZELON, Circuit Judge (concurs in the result).
 
 
 13
 Mackey v. United States, 1958, 103 U.S. App.D.C. 146, 255 F.2d 898; Coastal Bend Television Co. v. Federal Communications Comm'n, 1956, 98 U.S.App.D.C. 251, 234 F.2d 686; Van Curler Broadcasting Corp. v. United States, 1956, 98 U.S.App.D.C. 432, 236 F.2d 727.