**FORT HARRISON TELECASTING COR-
PORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee.**

No. 16321.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 31, 1961.

Decided Dec. 14, 1961.

Mr. Edward F. Kenehan, Washington, D. C., with whom Mr. Henry R. Goldstein, Washington, D. C., was on the brief, for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, Federal Communications Com-

mission, and Daniel R. Ohlbaum, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Before Mr. Justice REED, retired,* WILBUR K. MILLER, Chief Judge, and BAZELON, Circuit Judge.

WILBUR K. MILLER, Chief Judge.

In 1958, Wabash Valley Broadcasting Corporation applied to the Federal Communications Commission for renewal of its license to operate station WTHI-TV on Channel 10 in Terre Haute, Indiana. Livesay Broadcasting Company also applied for Channel 10. These two mutually exclusive applications were considered in a comparative hearing and a trial examiner filed an initial decision recommending the grant of Wabash Valley's renewal application and the denial of Livesay's application. When notice of the present appeal was given on April 28, 1961, the Commission had not acted on the examiner's initial decision.

Wabash Valley filed, in addition, an application for a construction permit to change its station from Channel 10 to Channel 2 in Terre Haute. Illiana Telecasting Corporation also applied for Channel 2. The two applications for Channel 2 have been heard in a comparative proceeding and a trial examiner has filed an initial decision holding that Wabash Valley's application should be granted, and Illiana's denied. When this appeal was taken, the Commission had not acted on the examiner's initial decision

With the situation as just described, Fort Harrison Telecasting Corporation on October 5, 1960, tendered to the Commission for filing its application for a construction permit for a new television broadcast station to operate on Channel 10. Fort Harrison had not applied for that channel in 1958 when Wabash Valley sought renewal of its expiring license and Livesay filed a competing application; so Fort Harrison was not a party to the comparative hearing on the applications of

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code.

Wabash Valley and Livesay for Channel 10. It is apparent then that the Commission will grant that channel either to Wabash Valley or to Livesay; it cannot grant Channel 10 to Fort Harrison in that proceeding.

Fort Harrison's application was therefore by its terms made expressly contingent upon the grant of Channel 10 to Wabash Valley and the grant of the latter's application to change from Channel 10 to Channel 2. Only upon the happening of those two contingencies would Channel 10 be open so Fort Harrison could apply for it. Obviously, if Channel 10 should be granted to Livesay, or if Wabash Valley should be awarded Channel 10 but denied the right to change to Channel 2, Channel 10 would not be available for application by Fort Harrison or any other applicant.

Section 1.305(c) of the Commission's Rules reads as follows:

"An application for construction permit for a new broadcast station, the facilities for which are specified in an outstanding construction permit, will not be accepted for filing."

When Fort Harrison tendered its contingent application for Channel 10, it referred to this rule but suggested it was inapplicable because "There is no construction permit in connection with WTHI's [Wabash Valley's] channel 10 operation."[1] Fort Harrison also requested that the rule be waived, if it were thought applicable.

On November 30, 1960, the Commission wrote Fort Harrison saying, in part: "Since the facilities which you request are specified in an outstanding authorization, Channel 10 is not available for application and your application is not acceptable for filing at this time." The letter further stated:

"* * * [T]he Commission does not believe that you have shown good cause for a waiver of Section 1.305 (c) of the Rules. Finally, as a matter of policy, the Commission would, in all likelihood, not act on your contingent application, assuming the eventual availability of Channel 10, until sufficient time had elapsed for other interested parties to have an opportunity to file competing applications for said channel. This being so, there appears to be no sound reason, at this time, for accepting your contingent application."

On January 3, 1961, Fort Harrison filed a petition for reconsideration of the Commission's action of November 30, 1960, and again tendered for filing an application for Channel 10, which was expressly contingent on the grant of Wabash Valley's pending renewal application for Channel 10 and upon the grant of Wabash Valley's pending application to change its facilities to Channel 2. Fort Harrison argued that, as the Commission had theretofore accepted for filing contingent applications for facilities specified in outstanding standard broadcast licenses, it should accept contingent applications for television broadcast stations. Also it repeated its argument that the Rule applied only to an outstanding construction permit, and not to an outstanding license.

In denying the petition for reconsideration on March 29, 1961, the Commission pointed out that

"* * * because of the length of the standard broadcast 'processing line' and the attendant delay in considering such applications, practicality has occasionally dictated the acceptance of an application for facilities specified in an outstanding standard broadcast license contingent upon such licensee vacating the frequency, where it would appear that the contingency might well be resolved by the time the application is reached for processing. However, since there is no comparable television processing delay, this practice provides no

---

[1]. Apparently Fort Harrison's theory was that a construction permit ceases to exist when a license is issued to its holder, even though the terms of the permit are incorporated in the subsequent license.

valid basis for your contention that the Commission must, therefore, change its policy with respect to the acceptance of contingent applications for television broadcast stations. * * * "

It further said:

" * * * Moreover, we have consistently held that contingent standard broadcast applications are not entitled to Commission consideration as applications until after satisfaction of the stated contingency, Northside Broadcasting Corp., 4 R.R. 411, and will not be allowed to give any particular applicant an undue advantage over other applicants who may wish to apply for the frequency to be vacated. The Jack Gross Broadcasting Co. (KFMB), 12 F.C.C. 80, 91. Grant of your proposal could, therefore, not immediately follow the grant of Station WTHI-TV's [Wabash Valley's] application for modification to Channel 2. * * * "

Fort Harrison appeals from the denial of its petition for reconsideration contained in the Commission's letter of March 29, 1961, of which public notice was given March 30, 1961. Claiming its application for a construction permit has been denied, it relies upon Section 402(b)(1) of the Federal Communications Act of 1934, 48 Stat. 1064, as amended, 47 U.S.C.A. § 402(b)(1), as the source of its right to appeal. It also claims that right as a person aggrieved within the meaning of Section 402(b)(6), 47 U.S.C.A. § 402 (b)(6). The pertinent part of Section 402(b) is as follows:

"Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia [Circuit] in any of the following cases:

"(1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

* * * * * *

"(6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1) * * * thereof."

Because Channel 10 was occupied, Fort Harrison did not seek an immediate hearing on its application. It merely wanted to file it, so it might lie in the Commission's "pending file" without processing, consideration or action of any kind, until Channel 10 should become available. The Commission's refusal to receive the application because it was prematurely tendered was without prejudice to Fort Harrison's right to file it if and when Channel 10 becomes available. So there is really no difference between the two methods of disposing of a contingent application, except that the return of the application to lie in the files of the applicant, instead of the pending file of the Commission, until the channel applied for becomes available, puts on the applicant the burden of watching for channel availability and tendering the application for filing when it occurs. This does not adversely affect the interests of the applicant, in our view.

Fort Harrison's counsel said in oral argument he wants to file the contingent application before decision in the pending comparative proceeding for Channel 10 because he fears that proceeding might be decided in favor of Livesay. But, as Fort Harrison is not a party to the comparative proceeding, the filing of its contingent application prior to decision therein would have no effect as far as that proceeding is concerned, and would not improve Fort Harrison's position with respect to Channel 10. Consequently, even if the contingent application had been received for filing, an award to Livesay in the comparative proceeding would have the effect of keeping Channel 10 unavailable just as it is now, and with no prospect whatever that it would be immediately vacated.

The Supreme Court said in Chicago & Southern Air Lines v. Waterman Steamship Corp., 333 U.S. 103, 112–113 (1948), 68 S.Ct. 431, 437, 92 L.Ed. 568, that

" * * * [A]dministrative orders are not reviewable unless and until

they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process. * * * "

We conclude that, as the order of the Commission from which this appeal was taken did not grant or deny a construction permit or a station license, and did not impose an obligation, deny a right, or fix a legal relationship, it is an unreviewable interlocutory order. Fort Harrison is not aggrieved by the order, and its interests are not adversely affected thereby.

Appeal dismissed.