FORT HARRISON TELECASTING COR-
PORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Illiana Telecasting Corporation, Wabash
Valley Broadcasting Corporation,
Intervenors.

220 TELEVISION, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

American Broadcasting-Paramount Thea-
tres, Inc., Signal Hill Telecasting Cor-
poration, Intervenors.

SANGAMON VALLEY TELEVISION
CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Signal Hill Telecasting Corporation, Illi-
ana Telecasting Corporation, American
Broadcasting-Paramount Theatres, Inc.,
Plains Television Corporation, 220 Tele-
vision, Inc., The State of Illinois, Metro-
media, Inc., Intervenors.

Nos. 17279, 17356, 17380.

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1963.

Decided June 27, 1963.

Petition for Rehearing En Banc by
Petitioner in No. 17,380 Denied
Sept. 25, 1963.

Petitions for Rehearing En Banc by Peti-
tioner in No. 17,356 and by State of
Illinois, Intervenor in No. 17,380 Denied
Nov. 6, 1963.

See also 111 U.S.App.D.C. 113, 294 F.2d 742.

Mr. H. Ralph Johnston, of the bar of the Supreme Court of Indiana, Terre Haute, Ind., pro hac vice, by special leave of court, with whom Messrs. Edward F. Kenehan and Henry R. Goldstein, Washington, D. C., were on the brief, for petitioner in No. 17,279.

Mr. Alan Y. Naftalin, Washington, D. C., with whom Mr. Bernard Koteen, Washington, D. C., was on the brief, for petitioner in No. 17,356.

Mr. D. M. Patrick, Washington, D. C., with whom Messrs. Stanley S. Harris, Washington, D. C., and Jay E. Ricks were on the brief, for petitioner in No. 17,380.

Mr. Daniel R. Ohlbaum, Assoc. Gen. Counsel, with whom Mr. Max D. Paglin, Gen. Counsel, and Mrs. Louise H. Renne, Counsel, Federal Communications Commission, were on the brief, for respondent Federal Communications Commission. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance in Nos. 17,279 and 17,356.

Mr. Lionel Kestenbaum, Attorney, Department of Justice, was on the brief for respondent United States of America.

Mr. Thomas H. Wall, Washington, D. C., with whom Mr. John B. Jacob, Washington, D. C., was on the brief, for intervenor Illiana Telecasting Corp. in Nos. 17,279 and 17,380.

Mr. Michael H. Bader, Washington, D. C., for intervenor Wabash Valley Broadcasting Corp., in No. 17,279. Messrs Andrew G. Haley and William J. Potts, Jr., Washington, D. C., were on the brief for intervenor Wabash Valley Broadcasting Corp. in No. 17,279.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for intervenor American Broadcasting-Paramount Theatres, Inc., in No. 17,356, and intervenors American Broadcasting Paramount Theatres, Inc., Plains Television Corp. and Metromedia, Inc., in No. 17,380. Mr. David S. Stevens, Washington, D. C., also entered an

appearance for intervenor Plains Television Corp.

Mr. Monroe Oppenheimer, Washington, D. C., with whom Mr. Isadore G. Alk, Washington, D. C., was on the brief, for intervenor Signal Hill Telecasting Corporation in Nos. 17,356 and 17,380.

Mr. Maxwell Brooks Byus, Springfield, Ill., for intervenor State of Illinois in No. 17,380.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

WASHINGTON, Circuit Judge.

These cases present questions arising from the action of the Federal Communications Commission in transferring from Springfield, Illinois, the only VHF channel (Channel 2) allocated to that city, and substituting two UHF channels.[1] Channel 2 was reallocated to St. Louis, Missouri, and Terre Haute, Indiana. Both the removal of the channel from Springfield and the reallocation to St. Louis and Terre Haute are challenged here. Related matters are also raised.

**I.**

The controversy has a long history. On April 14, 1952, the Federal Communications Commission issued its "Sixth Report and Order," completing a national television allocation plan for the 12 VHF channels and 70 UHF channels. This report and order put into effect a policy of "intermixing," that is, allocating both VHF and UHF channels to the same communities. VHF Channel 2 was allocated for use at Springfield, Illinois, along with two UHF channels. At that time the Sangamon Valley Television Company (hereafter referred to as Sangamon), the petitioner in No. 17,380, which had previously applied for authority to construct and operate a television broadcast station at Springfield, amended its application to request the use of VHF Channel 2 at Springfield. It is now the only applicant for such use.[2] Channel 2 has not been in actual use in Springfield.

On March 1, 1957, the Commission issued a Report and Order amending the allocation plan adopted in 1952. This order adopted a policy of "deintermixing," and began the process of assigning only VHF channels or only UHF channels to a given community.[3] In this order the Commission took VHF Channel 2 from Springfield and assigned it for use in St. Louis, Missouri, and Terre Haute, Indiana. In place of VHF Channel 2, it

---

1. We have heretofore dealt with a number of aspects of the UHF-VHF problem. See our decisions in Logansport Broadcasting Corp. v. United States, 93 U.S.App.D.C. 342, 210 F.2d 24 (1954); Coastal Bend Television Co. v. Federal Communications Commission, 98 U.S.App. D.C. 251, 234 F.2d 686 (1956); Van Curler Broadcasting Corp. v. United States, 98 U.S.App.D.C. 432, 236 F.2d 727, cert. denied, 352 U.S. 935, 77 S.Ct. 226, 1 L.Ed.2d 163 (1956); WIRL Television Co. v. United States, 102 U.S. App.D.C. 341, 253 F.2d 863, vacated, 358 U.S. 51, 79 S.Ct. 94, 3 L.Ed.2d 47 (1958); and remanded to the Commission, 107 U.S.App.D.C. 21, 274 F.2d 83 (1959); Springfield Television Broadcasting Corp. v. Federal Communications Commission, 104 U.S.App.D.C. 13, 259 F.2d 170 (1958), cert. denied, 358 U.S. 930, 79 S.Ct. 316, 3 L.Ed.2d 303 (1959); Owensboro on the Air, Inc. v. United States, 104 U.S.App.D.C. 391, 262 F.2d 702 (1958), cert. denied, 360 U.S. 911, 79 S.Ct. 1296, 3 L.Ed.2d 1261 (1959); Transcontinent Television Corp. v. Federal Communications Commission, 113 U. S.App.D.C. 384, 308 F.2d 339 (1962).

2. The application of WMAY-TV for VHF Channel 2 at Springfield has been withdrawn.

3. The reason for the change in policy was the fact that experience had shown that as a general rule UHF stations were unable to compete successfully with VHF stations. That is, they were at a disadvantage in broadcasting range, in the price of sets for receiving UHF signals, in obtaining network affiliations, in securing listeners and advertisers, and were thus considered less desirable. See, e. g., Coastal Bend Television Co. v. Federal Communications Commission, supra note 1; WIRL Television Co. v. United States, supra note 1; Note, The Darkened Channels: UHF Television and the FCC, 75 Harv.L.Rev. 1578 at 1582 et seq. (1962).

allocated to Springfield two more UHF channels: No. 36 and No. 26. On Sangamon's appeal this court held that the order deintermixing Springfield was not arbitrary, capricious, or inconsistent with Section 307(b) of the Communications Act. Sangamon Valley Television Corp. v. United States, 103 U.S.App.D.C. 113, 255 F.2d 191 (1958). The case was, however, remanded to us by the Supreme Court, 358 U.S. 49, 79 S.Ct. 94, 3 L.Ed. 2d 47 (1958), because of certain testimony given before a congressional committee subsequent to our decision. We thereupon vacated the Commission's order of March 1, 1957, and remanded the case for an evidential hearing as to the ex parte approaches made to the Commissioners in connection with the 1957 Report and Order, as revealed in the cited testimony. Sangamon Valley Television Corp. v. United States, 106 U.S. App.D.C. 30, 269 F.2d 221 (1959). We later directed that an entirely new proceeding be conducted to determine where and to whom VHF Channel 2 should be assigned. Sangamon Valley Television Corp. v. United States, 111 U.S.App.D.C. 113, 294 F.2d 742 (1961).

The Commission initiated and conducted another proceeding relating to Channel 2, and in a Report and Order issued July 20, 1962, reached the same conclusions as in its 1957 order: that VHF Channel 2 should be taken from Springfield, Illinois, and be given to St. Louis, Missouri, and Terre Haute, Indiana, and that in compensation Springfield should be awarded UHF Channels 26 and 36.[4]

4. The Commission in its 1957 order awarded Channel 2 in St. Louis to Signal Hill Telecasting Corporation, and made a similar award in its 1962 order, on a temporary basis. This award is not before us in the present group of cases.

5. As indicated above, both these contentions were made in the initial appeal and were found by us to be without merit. Sangamon Valley Television Corp. v. United States, 103 U.S.App.D.C. 113, 255 F.2d 191 (1958). We reexamine the matter now in the light of the record presently before us.

## II.

In No. 17,380, Sangamon and the State of Illinois as intervenor have appealed as to the action taken in the 1962 order insofar as it affects Springfield. The parties have stipulated that the questions presented are (1) whether the Commission's action in deleting the only VHF channel assigned to Springfield, reassigning it to St. Louis and Terre Haute, and substituting for it in Springfield two UHF channels, violated Section 307(b) of the Communications Act, 47 U.S.C. § 307(b) (1958), and (2) whether in the circumstances this action was arbitrary and capricious.[5]

(1) The principal contention of Sangamon and the State is that Section 307 (b) [6] was violated because the Commission failed to determine initially whether Springfield on the one hand, or St. Louis and Terre Haute on the other hand, had the greater need for VHF Channel 2, which as a matter of electronic engineering could not be utilized by all three cities.

In Federal Communications Commission v. Allentown Broadcasting Corp., 349 U.S. 358, 75 S.Ct. 855, 99 L. Ed. 1147 (1955), the Supreme Court approved the principle that when mutually exclusive applicants seek authority to construct stations to serve different communities the Commission should first determine which community has the greater need for additional services, and then should determine any other questions presented. See 349 U.S. at 361–362, 75 S.Ct. at 857–858. We do not read Allen-

6. Section 307(b) reads:
"In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same."

town as requiring that the relative needs of two communities for television transmission service be determined solely on the basis of the need for VHF service. Nor has any decision to that effect been cited to us. In Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 281–282, 53 S.Ct. 627, 634–635, 77 L.Ed. 1166 (1933), the Court said, speaking of comparable provisions of the Radio Act of 1927, 44 Stat. 1166:

> "We find in the Act no command with the import upon which respondents insist. The command is that there shall be a 'fair and equitable allocation of licenses, wave lengths, time for operation and station power to each of the States within each zone.' It cannot be said that this demanded equality between States *with respect to every type of station.* * * * In making its 'fair and equitable allocations,' *the Commission was* entitled and *required to consider all the broadcasting facilities assigned to the respective States,* and all the advantages thereby enjoyed, and to determine whether, in view of all the circumstances of distribution, a more equitable adjustment would be effected by the granting of the application of Station WJKS and the deletion of Stations WIBO and WPCC." (Emphasis added.)

The quoted language appears equally applicable here. We conclude that so long as the television transmission service allocated to a community, whether it be solely VHF, UHF, or a combination of both, is determined on the basis of relative need, amounts to a fair and equitable distribution of service for that community, in relation to others, and gives efficient service to the community, the standard set out in Section 307(b) is fully met.

We think that the Commission's action here with respect to Springfield— giving it four UHF channels, one reserved for educational purposes, and no VHF channel—meets this test. The Commission stated that its objective was

> "to distribute television channel assignments in the manner which is most likely to augment opportunities for full and effective use of the television broadcast frequencies and to provide the greatest amount of television service to the public in the communities involved. * * "

and with respect to Springfield that its primary objective was

> "to provide Springfield, the capital of the State of Illinois, with a 1960 population of 83,271 and a population of 146,539 in its home county (Sangamon), with television assignments which offer the most realistic opportunities for the development of adequate television services to fill the needs and interests of the residents of the Springfield area. The question we must decide is whether all UHF assignments or VHF Channel 2 in combination with UHF assignments would best do so under present conditions, for it does not appear that other VHF channels may be assigned to Springfield under existing rules."

The Commission said further:

> "The responsibility of the Commission under the mandate of Section 307(b) would clearly not be met by a theoretically feasible VHF assignment at Springfield * * * which, in light of our conclusions, would have the result, at least for the foreseeable future, of destroying or inhibiting existing service in either or both the Springfield and St. Louis areas and of limiting opportunities for the growth of a greater number of television outlets and services in Springfield * * *, as well as in either or both the St. Louis and Terre Haute areas."

The Commission implemented this conclusion with detailed findings, with respect to each community involved, as to population, existing service, the need for additional outlets, and the type of addi-

tional service, UHF or VHF, which would best meet this need. In deciding upon a final pattern of assignments for Springfield and the other communities it took into account the public interest, the inferior competitive position of UHF in a VHF market, the competitive effect of Channel 2 in each of the communities before it,[7] so-called "white areas" (areas which would be without service), the greater coverage given by VHF, and the satisfactory service being given by UHF in Springfield.

The record shows that by 1960 all of the homes having television sets in Sangamon County, in which Springfield is situated, were equipped for UHF reception, that substantial percentages of the television homes in neighboring counties were similarly equipped, and that public acceptance of UHF in central Illinois had increased substantially. Furthermore, Congress, at the Commission's urging, has enacted legislation authorizing the Commission to require that all television receiving sets sold to the public after shipment in interstate or foreign commerce be equipped to receive all channels. See Act of July 10, 1962, Public Law 87–529, 76 Stat. 150. The Commission believes that if sets are so equipped, UHF will be increasingly used and expanded in intermixed areas and that UHF will have an incentive to improve its technological and service potentials.

■ The action taken here was of course in a rule-making proceeding. It is not for us to pass on the wisdom of a channel allocation scheme, but only to ascertain whether "the Commission action in this area committed to its discretion has a reasonable factual and legal basis." See Coastal Bend Television Co.

v. Federal Communications Commission, supra note 1; WIRL Television Co. v. United States, supra note 1. We cannot say that the Commission's informed decision, that Springfield's need for additional television transmission service was fairly, efficiently, and equitably met by the allocation made to it, was in violation of the statute. While we entirely sympathize with the desire of the State of Illinois and Sangamon for a VHF channel at Springfield, it is not within our competency or function to say that Springfield's need could be met only by a single VHF channel rather than by two additional UHF channels, in the light of all the circumstances shown.

(2) We reject the argument that the Commission's decision to delete Channel 2 from Springfield and substitute two UHF channels therefor was arbitrary and capricious because it duplicated the March 1, 1957, decision on the question. The Commission states in its Report that it made its present decision in the light of current considerations and current appraisals of the needs of the communities involved, rather than those of 1957. In our view, its conclusions are amply explained and supported by its findings. We note also that the membership of the Commission which rendered the 1962 decision was substantially different from the membership participating in the 1957 decision.

Nor do we think it arbitrary to deintermix Springfield, even though deintermixture proceedings are in general being held in abeyance, pending results under the new all-channel legislation mentioned above. The Commission notified Congress [8] that the Springfield case would be one of four proceeded with be-

---

7. In Federal Communications Commission v. Allentown Broadcasting Corp., supra, the Supreme Court indicated that in appraising the relative needs of communities for additional service, it is within the Commission's discretion to consider the need of one community for local competition. 349 U.S. at 362, 75 S.Ct. at 858. See also Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869

(1940). We think it clear that the Commission here could, as it did, consider the impact of Channel 2 on local UHF competition in Springfield, and the needs of St. Louis and Terre Haute for Channel 2 from competitive and other standards.

8. See H.R.Rep. No. 1559, 87th Cong., 2d Sess., 7–8, 21, 22–26; S.Rep. No. 1526, 87th Cong., 2d Sess., 6–7, 14, 15–19.

cause it would not involve any dislocation or disruption of existing service in the areas involved.[9] As we pointed out in WIRL Television Co. v. United States, supra, 102 U.S.App.D.C. at 344, 253 F.2d at 866, with respect to deletion of a VHF channel and substitution of two UHF channels at Peoria, Illinois, in similar circumstances, the long range goal of the Commission—which is reflected in the legislation—is to encourage UHF. As Springfield has never made use of VHF Channel 2, it is not arbitrary, as it was not in WIRL, to conclude that the goal will be better approached "by allotting it four technically equal UHF channels, rather than one superior VHF channel and two inferior UHF channels."[10]

### III.

In No. 17,356, we are asked to review the decision of the Commission—made in the same rule-making proceeding—to allocate VHF Channel 2 in the Missouri area to St. Louis rather than to Rolla-Salem, Missouri.[11]

In 1959, petitioner 220 Television, Inc., was licensed to operate on VHF Channel 11 in St. Louis. As the latest licensee of the four operators of VHF stations there, it was unable to procure a network affiliation. From April 1959 to October 1, 1961, its operating deficit was more than $1,000,000. When the new proceeding in the Springfield "deintermixing" case was initiated in September 1961, 220 Television appeared before the Com-

mission to urge the allocation of Channel 2 to the Rolla-Salem section of Missouri, which then had one unused UHF channel assigned to it.[12] The proposal was endorsed in numerous letters from local residents, organizations and public officials of communities in the Rolla-Salem area. The Commission, however, rejected the proposal, assigned Channel 2 to St. Louis, and awarded a license to operate on Channel 2 to Signal Hill, as already indicated. 220 Television has appealed.

(1) We are asked primarily to decide whether the Commission made a fair, efficient, and equitable distribution of broadcast service as between St. Louis and Rolla-Salem consistently with Section 307(b) of the Communications Act.

The Commission made detailed findings as to the television service presently available to the Rolla-Salem area, its population, the number of homes equipped to receive television, conditions of terrain and other matters. It pointed out that the assignment of Channel 2 to the area would virtually establish a one station monopoly and that the use of UHF in the area would provide opportunities for a greater number of local outlets and choice of services. It also noted that Channel 2 could not be used in the Rolla-Salem area "without depriving a large area and population in Illinois and Missouri of a needed competitive service." It concluded that the public interest would not be served by assigning

---

9. We have seen that Channel 2, assigned to Springfield in 1952, has never been used there, but has been in use in St. Louis on a temporary basis following the 1957 allocation. See note 4, above.

10. In Greylock Broadcasting Co. v. United States, 97 U.S.App.D.C. 414, 416, 231 F.2d 748, 750 (1956), we said:
"If this court were to declare now that a new VHF station, which would eliminate UHF stations presently in an area, is in the public interest, that declaration would conclude the whole controversy now being so exhaustively explored by the Commission. We cannot do that on the evidence before us; indeed it is not

our function to declare initially what is in the ultimate public interest."

11. Rolla is a town with a 1960 population of 11,132 situated in a county with a 1960 population of 25,396. Salem's 1960 population was 3,870, and the 1960 population of the county in which it was located was 10,445. The two towns are about 26 miles apart.

12. This proposal would also have permitted use of Channel 2 at either Springfield or Terre Haute under the Commission's spacing requirements. As part of the proposal 220 Television committed itself to apply for a permit to construct and operate a station to broadcast on Channel 2 at Rolla-Salem.

Channel 2 to Rolla-Salem nor would such an assignment achieve a fuller, fairer or more efficient use of the television spectrum.

We think the Commission's conclusions with respect to Rolla-Salem are adequately supported, explained, and justified. We do not find them arbitrary and capricious, and we find no error warranting a remand. Cf. Television Corporation of Michigan v. Federal Communications Commission, 111 U.S.App.D.C. 101, 294 F.2d 730 (1961).

■ (2) Only one other question among those argued has not been disposed of by the foregoing discussion. In Sangamon Valley Television Corp. v. United States, 111 U.S.App.D.C. 113, 294 F.2d 742 (1961), we directed the Commission to determine in a new proceeding where and to whom Channel 2 should be assigned. We there gave the Commission the right in its discretion to maintain existing services. The Commission in its discretion permitted Channel 2 to be used on a temporary basis in St. Louis pending final decision. Its latest conclusions as to the final assignment of Channel 2 appear to be predicated to some extent on the fact that Channel 2 was already being used in St. Louis, and that a change would deprive a large area and population of a needed competitive service. We are troubled by this line of reasoning. Temporary authorizations for station operation granted by the Commission should not be made the basis of preferring the holder of the authorization over other competing applicants for a permanent license. Similarly, where cities are competing for channel allocations, a temporary allocation to one city rather than another should not operate to create vested rights. But each situation of this sort must be judged on its own merits, and we are satisfied that the Commission's conclusions here are adequately buttressed by the other grounds on which it relied. Under the circumstances, we do not believe we would be justified in setting aside the Commission's action because it relied in part on the line of reasoning here under discussion.

## IV.

■ In No. 17,279, Fort Harrison Telecasting Company appeals from the Commission's action in announcing that it would not accept new applications for use of Channel 2 at Terre Haute. This announcement was made in the Commission's Report and Order of July 20, 1962, here under review.

In 1957, Wabash Valley Broadcasting Corporation, now holding a license and operating on VHF Channel 10 in Terre Haute, applied to shift its operations from Channel 10 to Channel 2, the allocation of which to Terre Haute has now been affirmed by us in No. 17,380. Illiana Telecasting Corporation likewise applied in 1957 for a license to operate on Channel 2 at Terre Haute. The Commission concluded a comparative hearing on the two applications in December 1959. It heard argument on the two applications en banc in 1960, but has not yet acted in the matter.[13]

Fort Harrison Telecasting Corporation was organized in 1960. Describing itself as a prospective applicant for Channel 2 at Terre Haute, it appeared before the Commission in the rule-making proceeding to support the allocation of that channel to Terre Haute. It stated that it assumed that if Channel 2 were allocated to Terre Haute the Commission would accept new applications for the channel, and requested the Commission to grant a temporary authorization for use of the channel pending completion of the comparative hearing.[14] The Commission determined that it would not open up Channel 2 at Terre Haute to new applications, stating:

"We believe it only fair and just, and in the public interest, to bring

---

13. The Examiner filed an initial decision in favor of Wabash Valley.

14. Apparently it did not urge that this special authorization be made solely to Fort Harrison.

the long-standing comparative proceeding for Channel 2 at Terre Haute to a close by disposing of the two applications under consideration therein on their merits as soon as possible after the effective date of the Terre Haute Channel 2 assignment. A long-awaited and needed second local outlet may thereby be established at Terre Haute without any further undue delay. All interested parties had an opportunity to apply for Channel 2 at Terre Haute in 1957. Three applicants applied. Their applications were designated for consolidated hearing on December 5, 1957. On April 29, 1958, one application was dismissed without prejudice. A comparative hearing on the other two applications was concluded in December of 1959, and the matter is now before the Commission for final action. In light thereof, new applications will not be accepted for Channel 2 at Terre Haute at this time."

Though we recognize the force of the reasons advanced by the Commission, we think its ruling was erroneous, in the light of our decision in Sangamon Valley Television Corp. v. United States, 111 U.S.App.D.C. 113, 294 F.2d 742 (1961). In that case, we directed the Commission to conduct an entirely new proceeding—the Commission's 1957 order having been vacated on May 8, 1959—saying "it would not be appropriate for the Commission to determine in 1961 on the basis of a somewhat supplemented 1957 record where and *to whom* VHF Channel 2 ought to be assigned." (Emphasis added.) In the new rule-making proceeding now before us for review the Commission determined the "where" for assignment of Channel 2—Terre Haute and St. Louis. It remains for it to con-

duct the new adjudicatory proceeding, which we directed, to determine the licensee of that channel in Terre Haute. Certainly that determination cannot be made on the basis of applications made in 1957 and hearings held in 1959, long before 1961, when we directed an entirely new proceeding. We reiterate that under our 1961 order the licensee of Channel 2 in Terre Haute is to be determined on the basis of the comparative qualifications of applicants as of the present time, rather than on a record made in 1959 concerning the qualifications of the then applicants.

In No. 17,279 we remand the case to the Commission with directions to permit the filing of applications [15] for a license to use Channel 2 in Terre Haute within a reasonable time limit to be set by the Commission in its discretion, and to hold a comparative hearing to determine which applicant shall receive the license. The Commission may in its discretion allow a temporary or interim use of the channel pending final determination, or adopt some other means of providing prompt service to Terre Haute, if in its judgment the public interest will be served by so doing.

The action of the Commission in Nos. 17,356 and 17,380 is affirmed. We remand as to No. 17,279 for action not inconsistent with this opinion.

So ordered.

J. SKELLY WRIGHT, Circuit Judge (dissenting).

The case, in all its ramifications, demonstrates the bankruptcy of the F.C.C.'s program for assigning VHF and UHF television channels pursuant to Section 307(b) [1] of the Communications Act of 1934. It also shows what an administrative mess can result when improper influence is brought to bear on the in-

---

15. The Commission argues that since Fort Harrison did not file a timely application for the channel with the Commission, it is now barred from applying, citing Fort Harrison Telecasting Corp. v. Federal Communications Commission, 111 U.S.App.D.C. 368, 297 F.2d 779 (1961).

Whatever the force of this contention in ordinary circumstances, we think that our decision in the 1961 Sangamon case, 111 U.S.App.D.C. 113, 294 F.2d 742, forecloses it here.

1. 49 Stat. 1475, 47 U.S.C. § 307(b).

dividual members of the Commission in connection with making these assignments.[2]

Section 307(b) requires that the Commission grant television channels, both UHF and VHF, "among the several States and communities [so] as to provide a fair, efficient, and equitable distribution of [television] service to each of the same." 47 U.S.C. § 307(b). This language of § 307(b) means what it says. F. C. C. v. Allentown Broadcasting Co., 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955).

In its Sixth Report and Order on Television Allocations, 1 Pike & Fischer R. R. 91:601 (1952), the Commission attempted to comply with this congressional mandate by adopting a table for distribution of VHF and UHF frequencies on an intermixture[3] basis, recognizing that it should disperse both VHF and UHF channels widely among states and communities and that, while more VHF channels should be assigned to the metropolitan centers, "[a]t the same time— and this is a basic element in the Commission's assignment plan—the Commission did not believe that large cities should receive an undue share of the relatively scarce VHF channels." Id. at 91:621. In the table of distribution which accompanied this Sixth Report and Order, Channel 2 was assigned to Springfield, Illinois. In the present rule-making proceedings, the Commission has ordered Channel 2 moved from Springfield to St. Louis, leaving Springfield, the capital city of our fourth largest state, without a VHF channel and giving St. Louis a total of five.

The reason for the Commission's action is difficult to understand. Initially this rule-making proceeding was undertaken when the Commission was pursuing a deintermixture[4] policy which it had adopted as an interim measure while studying the advisability of abandoning the VHF band altogether and assigning only UHF channels. It was while the Commission was pursuing this policy that this court approved the Commission's action transferring Channel 2 from Springfield to St. Louis, only to have that approval vacated by the Supreme Court because of *ex parte* contacts with the Commissioners by the president of Signal Hill during the proceedings which may have influenced the Commission in ordering the change. Sangamon Valley Television Corp. v. U. S., 358 U.S. 49, 79 S.Ct. 94, 3 L.Ed.2d 47 (1958).

The Commission's repeated effort to make this change was again voided, the second time by this court, which required the Commission to start anew and make a new record. Sangamon Valley Television Corp. v. United States, 111 U.S. App.D.C. 113, 294 F.2d 742 (1961). It is on this new record that the matter is now before us. The Commission has again ordered the removal of Channel 2 from Springfield to St. Louis. It has also decided to award Channel 2 to Signal Hill in that city.

Since the last remand, the Commission has changed its policy. It has abandoned deintermixture and re-embraced intermixture. It has sponsored legislation[5] requiring manufacturers to include a UHF band on all television receivers. In

2. For other F.C.C. messes, see WORZ, Inc. v. F. C. C., 106 U.S.App.D.C. 14, 268 F.2d 889 (1959), leave to file petition for writ of mandamus denied, Wortz, Inc., v. Prettyman, 361 U.S. 805, 80 S.Ct. 104, 4 L.Ed.2d 56 (1959); Massachusetts Bay Telecasters v. F. C. C., 104 U.S.App.D.C. 226, 261 F.2d 55 (1958), cert. denied, sub nom. WHDH, Inc. v. Federal Communications Commission, 366 U.S. 918, 81 S.Ct. 1094, 6 L.Ed.2d 241 (1961); WKAT v. Federal Communications Com-

mission, 103 U.S.App.D.C. 324, 258 F.2d 418 (1958).

3. Intermixture means assigning both VHF and UHF channels to the same area.

4. Deintermixture involves limiting areas to either VHF or UHF channels.

5. Act of July 10, 1962, Public Law 87–529, 76 Stat. 150.

so doing, it advised the Congress that the proposed solution to the UHF—VHF problem involving use of only the UHF band was now rejected. The Commission also made it clear to the Congress "that it does not view deintermixture as a general or long-range solution for the television allocations problem. Quite to the contrary, the Commission has emphasized that an intermixed system utilizing both UHF and VHF channels is needed to achieve [their] long-range goal of an effective national television system and that the all-channel receiver legislation is the key to that long-range goal." S.Rep. No. 1526, 87th Cong., 2d Sess., to accompany H.R.Rep. No. 8031, 87th Cong., 2d Sess., reprinted in 1 U.S.Code Cong. & Adm. News, 87th Cong., 2d Sess., p. 1877 (1962). Thus it appears that instead of deintermixture or a 70-channel UHF-only television system, the Commission has now decided upon an intermixture policy using an all-channel receiver as its solution to the UHF—VHF problem.[6]

Pursuant to the new policy, a moratorium has been ordered on all deintermixture proceedings pending before the Commission, with the exception of three or four, including Channel 2 in Springfield. These three or four deintermixture proceedings would continue, however, with the F.C.C. giving "weight to the congressional policies set forth in this report, and specifically, to any loss of service to the public which would result in the abandonment of VHF channels allocated to the particular communities involved in these cases." Id. at p. 1878. This same Committee Report went on to state: "We emphasize that the aim of this measure is an intermixed television system using both 12 VHF and 70 UHF channels." Id. at p. 1879.

Thus it appears that if this transfer of Channel 2 from Springfield to St. Louis is affirmed, in spite of the fact that the aim of Congress and the Commission's present policy is not deintermixture but intermixture, Springfield will be one of the three or four deintermixed communities in the country. It appears to me, therefore, that the transfer of Channel 2 would be an obvious violation of the congressional policy stated in § 307 (b). Moreover, the Commission's action, in addition to violating § 307(b), is arbitrary and capricious in that it discriminates against the three or four communities in the country marked for deintermixture. In reaching these conclusions, in view of the background of this case, the expertise of the Commission has not been a compelling consideration.

I respectfully dissent.

6. The Commission's brief, at pp. 12–13, reads:
"The Commission also proposed to Congress the adoption of so-called all-channel receiver legislation, to give the Commission authority to require that all television receivers shipped in interstate commerce be capable of receiving UHF as well as VHF channels. This legislation was enacted (Public Law 87–529, July 10, 1962). When the bill was being considered, the Commission, in response to Congressional inquiry, expressed its judgment that, during the period of time needed to indicate whether the all-channel receiver would in fact achieve *the Commission's goal of a satisfactory intermixed system*, it would be inappropriate to proceed with the eight new selective deintermixture proceedings initiated on July 27, 1961. However, the Commission expressly excluded from the proposed 'moratorium' four deintermixture proceedings which were then pending, including the Springfield Channel 2 situation, and this exclusion was accepted by Congress." (Emphasis supplied.)