**WITN–TV, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**Local Television Associations, Inc., Roy H. Park Broadcasting, Inc., Intervenors.**

**No. 87–1390.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 27, 1988.

Decided June 28, 1988.

As Amended June 28, 1988.

Craig J. Blakeley, with whom Robert A. Beizer and Adam M. Eisgrau, Washington, D.C., were on the brief for petitioner.

Sue Ann Preskill, Counsel, F.C.C., with whom Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Robert B. Nicholson and Laura Heiser, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents. John J. Powers, III, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for respondents.

Lawrence W. Secrest, III, Washington, D.C., was on the brief for intervenor, Roy H. Park Broadcasting, Inc. Robert L. Pettit, Washington, D.C., also entered an appearance for intervenor, Roy H. Park Broadcasting, Inc.

David D. Oxenford, Washington, D.C., was on the brief for intervenor, Local Television Associates, Inc.

Before ROBINSON, RUTH BADER GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

In August 1985 the Federal Communications Commission (FCC or Commission) assigned VHF TV channel 8 to Morehead City, North Carolina, over the objection of petitioner WITN-TV, Inc. (WITN), licensee of station WITN-TV, channel 7, Washington, North Carolina. *Report and Order*, 50 FED.REG. 33,546 (1985). WITN renewed its opposition to the assignment in a petition for reconsideration by the Policy and Rules Division and in a subsequent application for Commission review; both were denied. *Memorandum Opinion and Order*, MM Docket No. 84-790, RM-4801 (July 8, 1986); *Memorandum Opinion and Order*, 2 FCC Rcd 4146 (July 10, 1987). Roy H. Park Broadcasting, Inc. (Park), licensee of station WNCT-TV, channel 9, Greenville, North Carolina, also filed an application for FCC review. *See* 2 FCC Rcd at 4147.

WITN's petition for this court's review, in which it is joined by intervenor Park, urges that the assignment to Morehead City is not in the public interest because it would result in a "net loss" of "interference-free" television service. At a minimum, WITN contends, its objections constitute an application for waiver of the "go/no go" feature of the FCC's distance separation requirements. Under applicable "public interest" and "waiver" precedent, WITN maintains, its "net loss" allegations must be afforded a "hard look" by the FCC.

We hold that the FCC's assignment decision in this case properly adhered to the approach the Commission settled on in 1952 when it adopted the Table of Assignments method of allocating television channels. *Sixth Report and Order*, 41 F.C.C. 148 (1952) (*Sixth Report*). The waiver concept does not serve in this context, for petitioner's plea, although ingeniously crafted, is in essence one for agency reconsideration of existing policy. Accordingly, the petition for review is denied.

In the *Sixth Report* the FCC concluded that a table of television channel assignments—a predetermined master plan for allocating channels—would best balance its statutory responsibilities to "make available ... to all the people of the United States" a nationwide radio service, 47 U.S.C. § 151 (1982), and to effect "the distribution of radio facilities in such a manner that the result is fair, efficient and equitable and otherwise in the public interest from the standpoint of the listening and

viewing public...." *Sixth Report,* 41 F.C. C. at 151 (citing 47 U.S.C. §§ 303, 307(b)). The Commission chose the Table of Assignments in preference to the "demand" method of allocation [1] for three principal reasons. The Table would make more efficient use of the limited frequencies available for television service, protect the interests of smaller communities and rural areas, and simplify allocation proceedings. *Id.* at 151–52. This court upheld the FCC's authority to utilize the Table of Assignments method in *Peoples Broadcasting Co. v. United States,* 209 F.2d 286 (D.C.Cir. 1953), and *Logansport Broadcasting Corp. v. United States,* 210 F.2d 24 (D.C.Cir. 1954).

Implementing the Table of Assignments concept required additional technical and policy decisions by the FCC. The Commission adopted a set of priorities in allocating channels:

Priority No. 1: To provide at least one television service to all parts of the United States.

Priority No. 2: To provide each community with at least one television broadcast station.

Priority No. 3: To provide a choice of at least two television services to all parts of the United States.

Priority No. 4: To provide each community with at least two television broadcast stations.

Priority No. 5: Any channels which remain unassigned under the foregoing priorities will be assigned to the various communities depending on the size of the population of each community, the geographical location of such community, and the number of television services available to such community from television stations located in other communities.

*Sixth Report,* 41 F.C.C. at 167. In addition, the FCC selected minimum separation distances, rather than "protected contours," as the check against objectionable interstation interference.[2] The FCC adopted a set of cochannel and adjacent channel separation requirements, and announced that those separations would constitute the sole protection against inter-station interference. *Sixth Report,* 41 F.C.C. at 178–89, 197–98; *see also* 47 C.F.R. § 3.612 (1953) ("[L]icensees of television broadcast stations are not protected from any interference which may be caused by the grant of a new station ... in accordance with the provisions of this subpart.").

In the instant case, WITN proffered for the FCC's consideration an engineering study which projected a net loss of "predicted interference-free" service if channel 8 were assigned to Morehead City.[3] The WITN-commissioned study estimated that the total number of viewers now located within the Grade B service areas [4] of WITN, WNCT, WXEX–TV, channel 8, Petersburg, Virginia, and WGHP–TV, channel 8, High Point, North Carolina whose service would be affected by new predicted interference, exceeds the total number of viewers located within the Morehead City station's Grade B service area, taking into

---

1. Under the demand method, used by the FCC for the AM radio service, an applicant must show that the proposed AM station can be operated without causing objectionable interference to, or receiving objectionable interference from, existing stations. *See* AM Station Assignment Standards, 45 F.C.C. 1515 (1964).

2. Objectionable interference in the AM service is defined in terms of stations' signal strength contours. *See* 47 C.F.R. § 73.37 (1987). Thus the method used to prevent objectionable AM interference is described as the "protected contour" method.

3. In the initial assignment proceeding WITN argued only that channel 8 should be assigned to the larger community of Norfolk, Virginia. *Report and Order,* 50 Fed.Reg. 33,546 (1985).

Following a change in station ownership, WITN in its petition for reconsideration and at all subsequent stages of the proceedings has presented the arguments addressed herein.

4. The Grade B contour defines the service area in which a picture quality acceptable to the median viewer is expected to be available 90 per cent of the time at the best 50 per cent of receiver locations at the outer limits of the area. Sixth Report and Order, 41 F.C.C. 148, 177 (1952). "The Grade B contour of a station marks the approximate outer boundary for satisfactory off-the-air viewing under normal circumstances." *Tele-Media Corp. v. FCC,* 697 F.2d 402, 404 n. 4 (D.C.Cir.1983).

account the interference effects of the same four stations on the Morehead City station's viewing area.[5] WITN contends that licensing this "net loss" of service cannot be reconciled with the FCC's statutory responsibility to regulate in the public interest.[6]

The FCC, throughout this proceeding, has relied on and emphasized its adherence to the policies and technical requirements adopted in the *Sixth Report*. The public interest as a whole, the FCC contends, is well served by the Table of Assignments and the minimum spacing "go/no go" procedure for allocating channels. The Commission declined to reevaluate its firm, longstanding policy that "operators of television stations are only protected from interference to the extent of the minimum spacings and maximum power and antenna height requirements." 2 FCC Rcd at 4147, citing 47 C.F.R. § 73.612(a) (1987); *see also* 47 C.F.R. § 3.612 (1953).

FCC consideration of WITN's "public interest" argument effectively would require the Commission to reevaluate the policies and procedures adopted in the *Sixth Report*, as they apply in this case.[7] However, it is a familiar principle of administrative law that "[a]n agency is not required to reconsider the merits of a rule each time it seeks to apply it." *Meredith Corp. v. FCC*, 809 F.2d 863, 873 (D.C.Cir.1987). In the *Sixth Report* the FCC struck a balance among a number of competing concerns, including the need to "maximize television service to the people of the United States," Brief of Petitioner at 20, as well as the interest of smaller communities in obtaining television stations of their own. *See Sixth Report*, 41 F.C.C. at 171-72. Similarly, the distance separation rules represent a balance between the need to make efficient use of the frequency spectrum and the goal of minimizing objectionable interference. *See Third Notice of Further Proposed Rule Making*, 16 FED.REG. 3072, 3077 (1951).

In accord with the FCC, we discern nothing in the present case that would mandate reassessment of the regime settled on in 1952. In particular, we disagree with WITN's claim that the type of "net loss" alleged here was not contemplated by the *Sixth Report*. The Commission explicitly considered and rejected a commenter's suggestion that "emphasis should be placed on locating the assignments, particularly VHF channels, so that the largest number of people will have television service but not necessarily that the largest number of communities should have one or more television stations of their own." *Sixth Report*, 41 F.C.C. at 171 (footnote omitted). The FCC's view that "as many communities as possible should have the opportunity of enjoying the advantages that derive from having local outlets that will be responsive

5. WITN's engineering study estimates that a total of 203,372 people within the Grade B contours of WITN (68,321), WNCT (77,768), WXEX (30,042), and WGHP (27,241) would experience interference—their service would be degraded below Grade B—from the Morehead City channel 8 assignment. Because WITN and WNCT share a transmitter site, the numbers for those two stations substantially overlap. Just 143,027 people would be located within the Morehead City station's Grade B service area, taking into account interference from the four named stations. Thus, the study projects a "net loss" of "interference-free" service to 60,345 viewers. Joint Appendix 294-319.

6. WITN also contends that any one of eighteen UHF stations could be assigned to Morehead City without creating the "net loss" of service of which WITN complains. The FCC responds that it received "no expression of interest in operating a [UHF] station." Memorandum

Opinion and Order, 2 FCC Rcd 4146, 4147 (July 10, 1987). Commission policy is not to allocate a channel absent express interest, "based in part on a recognition that UHF channels are not direct substitutes for VHF channels." *Id.* This policy is entirely consistent with that adopted in the Sixth Report, 41 F.C.C. at 168 (Table of Assignments distributes VHF as well as UHF channels to smaller communities).

7. The transmitter relocation cases WITN cites, *e.g.*, *Hall v. FCC*, 237 F.2d 567 (D.C.Cir.1956), and *Television Corp. of Mich., Inc. v. FCC*, 294 F.2d 730 (D.C.Cir.1961), are inapposite, as the FCC observes at 2 FCC Rcd 4148 n. 8. In the transmitter cases the FCC necessarily considers net gains and losses in a station's coverage, in pursuit of the Commission's obligation to insure that a station adequately serves the community to which it is assigned. Those cases do not involve inter-station interference, as the FCC notes.

to local needs," *id.* at 172, appears to us to leave no space for the principle advanced by WITN, that a projected "net loss" necessarily signals a public interest incompatibility.

WITN proposes that its opposition to the Morehead City assignment be construed as an application for waiver of the distance separation requirements.[8] Citing *WAIT Radio v. FCC*, 418 F.2d 1153 (D.C.Cir. 1969), WITN argues that the FCC must at a minimum take a "hard look" at the engineering data from which WITN infers that the assignment is not in the public interest. In the FCC's view, and ours, this line of argument does not alter or disguise the substance of WITN's challenge; at bottom WITN assails the firm policy choices embodied in the *Sixth Report.*

In *WAIT* this court remanded for FCC reconsideration an application for waiver of the FCC's "clear channel" rule. WAIT Radio contended that by using a directional antenna it could avoid the interference the clear channel rule was designed to prevent, and at the same time provide a unique AM service in the Chicago area. The court required the FCC to take a "hard look" at WAIT's allegations on the ground that "a general rule, deemed valid because its overall objectives are in the public interest, may not be in the 'public interest' if extended to an applicant who proposes a new service *that will not undermine the policy,* served by the rule, that has been adjudged in the public interest." *WAIT,* 418 F.2d at 1157 (emphasis added). Here, however, the "waiver" would directly conflict with the allocation policy the FCC "adjudged in the public interest" in the *Sixth Report.* This case, therefore, is encompassed within WAIT's recognition that "[a] general rule implies that a commission need not re-study the entire problem de novo and reconsider policy every time it receives an application for waiver of the rule." *Id.; see* 2 FCC Rcd at 4148 n. 9.

We conclude that the FCC properly identified WITN's "net loss" argument as an application for agency reexamination of the policy choices embodied in the *Sixth Report,* and we uphold the FCC's decision to reject WITN's plea. The petition for review is

*Denied.*

---

**8.** WITN does not appear in this case in the typical posture of an applicant who requests waiver of an FCC requirement with which it would otherwise be required to comply. Rather, WITN seeks to block an assignment which does comport with existing rules, on the basis of an argument that the FCC should require more in this instance than it does ordinarily.